RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Acting Chief of Civil Litigation
and Constitutional Defense

BRIAN V. CHURCH, ISB #9391
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
*Attorneys for Defendants Raúl Labrador,*
*Stephen F. Herzog, and Bill Thompson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO FEDERATION OF TEACHERS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et. al. <br><br> Defendants. | Case No. 1:23-cv-00353-DCN <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STANDARD OF DECISION ..............................................................................................1

ARGUMENT .......................................................................................................................4

    I.   Plaintiffs lack standing ...........................................................................................4

        a.  Plaintiffs have not suffered an injury in fact because there is no credible threat of prosecution ...............................................................................................................................5

        b.  Plaintiffs have not pled an injury that is traceable to the challenged conduct of Defendants ...........................................................................................................................8

        c.  Union Plaintiffs lack associational and organizational standing ...........................................9

    II.  Plaintiffs fail to state a claim and thus lack a likelihood of success on the merits .................10

        a.  Plaintiffs' first claim for relief fails because the Act does not prohibit Plaintiffs' pled conduct which they claim is protected by the First Amendment .....................................10

        b.  Plaintiffs' second claim for relief fails because the Act is not unconstitutionally vague 14

    III.  The remaining factors do not support a preliminary injunction ...............................................17

        a.  Plaintiffs are not likely to suffer irreparable harm ...............................................................17

        b.  The balance of equities does not favor Plaintiffs and an injunction is not in the public interest .........................................................................................................................18

CONCLUSION..................................................................................................................19

## TABLE OF AUTHORITIES

### CASES

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................10

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ..............................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................3

*Beteacourt v. Bloomberg*,
  448 F.3d 547 (2d Cir. 2006) ................................................................................................16

*Brunozzi v. Cable Communications, Inc.*,
  851 F.3d 990 (9th Cir. 2017) ..............................................................................................11

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
  271 F.3d 1141 (9th Cir. 2001) ............................................................................................17

*Cetacean Comm. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) ..............................................................................................4

*Coal. for Econ. Equity v. Wilson*,
  122 F.3d 718 (9th Cir. 2014) ..............................................................................................18

*Cowles Pub. Co. v. Magistrate Court of the First Jud. Dist.*,
  118 Idaho 753, 800 P.2d 640 (1990) ..................................................................................12

*Dobbs v. Jackson Women's Health Organization*,
  142 S. Ct. 2228 (2022) ..........................................................................................................1

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ............................................................................................18

*Echo Ranch Inc. v. State*,
  107 Idaho 808, 693 P.2d 454 (1984) ....................................................................................2

*Elsaesser v. Gibson*,
  168 Idaho 585, 484 P.3d 866 (2021) ....................................................................................6

*Estate of Stahl v. Idaho State Tax Comm'n*,
  162 Idaho 558, 401 P.3d 136 (2017) ..............................................................12

*Ex parte McCardle*,
  74 U.S. 506 (1868) ..............................................................................................4

*Fair Housing of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ...............................................................................9

*Fleck & Assocs., Inc. v. Phoenix*,
  471 F.3d 1100 (9th Cir. 2006) .............................................................................9

*Fraihat v. U.S. Immigration and Customs Enforcement*,
  16 F.4th 613 (9th Cir. 2021) ...............................................................................4

*Golden Gate Restaurant Ass'n v. City and Cnty of S.F.*,
  512 F.3d 1112 (9th Cir. 2008) ...........................................................................19

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ...........................................................................................16

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ...........................................................................................10

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ...............................................................................................15

*Johnson v. Riverside Healthcare Sys. LP*,
  534 F.3d 1116 (9th Cir. 2008) .............................................................................3

*Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019) .............................................................................16

*Keyishian v. Bd. of Regents of Univ. of N.Y.*,
  385 U.S. 589 (1967) ...........................................................................................15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .............................................................................................2

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ...........................................................................................16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ........................................................................ 9, 10

*Latta v. Otter*,
  771 F.3d 496 (9th Cir. 2014) .............................................................................18

*Lee v. City of Los Angeles,*
  250 F. 3d 668 (9th Cir. 2001) ...................................................................................3

*Leite v. Crane Co.,*
  749 F.3d 117 (9th Cir. 2014) ...................................................................................2

*Laird v. Tatum,*
  408 U.S. 1 (1972) ...................................................................................................18

*Lopez v. Candaele,*
  630 F.3d 775 (9th Cir. 2010) ...........................................................................*passim*

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................................................5

*Maryland v. King,*
  567 U.S. 1301 (2012) .............................................................................................18

*Meriwether v. Hartop,*
  992 F.3d 492 (6th Cir. 2021) .................................................................................14

*Miller v. Gammie,*
  35 F.3d 889 (9th Cir. 2003) ...................................................................................10

*Nā Po'e Kokua v. Bank of America Corp.,*
  No. 22-00238. 2023 WL 2042923 at *3 (D. Haw. 2023) .........................................9

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001) ...................................................................................3

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) .............................................................................................18

*New York v. Feber,*
  458 U.S. 747 (1982) ...............................................................................................16

*Nissou-Rabban v. Capital One Bank (USA), N.A.,*
  285 F. Supp. 3d 1136 (S.D. Cal. 2018) ...................................................................3

*Papasan v. Allain,*
  478 U.S. 265 (1986) .................................................................................................3

*R.M.S. Titanic, Inc. v. Haver,*
  171 F.3d 943 (4th Cir. 1999) ...................................................................................4

*Rust v. Sullivan,*
  500 U.S. 173 (1991) ........................................................................................*passim*

*Shuttlesworth v. City of Birminghan,*
    382 U.S. 87 (1965) ..................................................................................................16

*Southwest Fair Housing Council v. WG Scottsdale LLC,*
    No. 22-16345, 2023 WL 5820581 (9th Cir. Oct. 17, 2023) ....................................10

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ..........................................................................................4, 5, 8

*San Diego Cnty. Gun Rights Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996) ....................................................................................5

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ....................................................................................3

*State v. Schulz,*
    151 Idaho 863, 264 P.3d 970 (2011) ......................................................................12

*Susan V. Anthony List v. Driehaus,*
    573 U.S. 149 (2004) ..................................................................................................5

*Thomas v. Anchorage Equal Rights Commission,*
    220 F.3d 1134 (9th Cir. 2000) ..........................................................................5, 6, 8

*Twin Lakes Canal Co. v. Choules,*
    151 Idaho 214, 254 P.3d 1210 (2011) ....................................................................12

*United Pub. Workers of Am. v. Mitchell,*
    330 U.S, 75 (1947) ....................................................................................................7

*United States v. Auginash,*
    266 F.3d 781 (8th Cir. 2001) ..................................................................................15

*U.S. v. Reliant Energy Servs., Inc.,*
    420 F. Supp. 2d 1043 (N.D. Cal. 2006) ..................................................................15

*U.S. v. Williams,*
    553 U.S. 285 (2008) ..........................................................................................13, 15

*Virginia v. Am. Booksellers Ass'n,*
    484 U.S. 383 (1988) ................................................................................................12

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ..............................................................................1, 2

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................................................4, 17, 18

*Younger v. Harris*,
  401 U.S. 37 (1971) ......................................................................................................7

**CODE AND STATUTES**

Idaho Code § 18-8702 ...................................................................................................17

Idaho Code § 18-8705 ..........................................................................................6, 14, 17

Idaho Code § 18-8706 .....................................................................................................6

Idaho Code § 67-1401 ............................................................................................2, 3, 6

**RULES**

Federal Rule of Civil Procedure 12(b)(1) .................................................................1, 2, 4

Federal Rule of Civil Procedure 12(b)(6) .........................................................................3

Federal Rule Evidence 201 ..........................................................................................2, 4

**OTHER AUTHORITIES**

The New Oxford American Dictionary (2001) ............................................................12, 13

## INTRODUCTION

Plaintiffs have alleged that there is a law that prohibits them from teaching college courses concerning abortion, producing scholarship in favor of abortion, and grading papers concerning abortion. There is no such law in the State of Idaho.

Plaintiffs urge the Court to enjoin and overturn a statute that has been in place for well over two years because they subjectively fear that *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), has amended Idaho statutes to say something they do not. A statute does not chill more speech or become more difficult to decipher just because it mentions abortion. And *Dobbs* does not change Idaho's No Public Funds for Abortion Act ("Act"). What the Act does is prohibit the use of government funds for abortion or to support abortion providers. The law is simply a constitutional exercise of the State of Idaho's "value judgment favoring childbirth over abortion and the implement[ation of] that judgment by the allocation of public funds." *Rust v. Sullivan*, 500 U.S. 173, 192 (1991) (citation omitted). What *is* circumscribed is either government speech or conduct in the course of employment that is non-expressive, which is properly regulated under longstanding law.

Because Plaintiffs have nothing to fear from enforcement of the statute based on the conduct they have pled, and because no one has threatened to prosecute Plaintiffs, or anyone else for that matter, Plaintiffs lack any concrete injury and therefore standing. Because the law properly understood is a regulation of government speech and employee conduct, it passes First Amendment muster. For these reasons, Plaintiffs lack a likelihood of success on the merits and fail to state a claim. The Court, accordingly, should deny the motion for a preliminary injunction and dismiss the Complaint.

## STANDARD OF DECISION

Plaintiffs' standing may be challenged by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). This Court must presume it lacks

jurisdiction, and Plaintiffs bear the burden of establishing their standing, as they must establish sub-ject-matter jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Defendants, meanwhile, may pursue facial or factual attacks under Rule 12(b)(1). *White*, 227 F.3d at 1242. A facial attack looks only at the allegations in the pleading, and asserts they are insufficient to establish jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The Court would resolve a facial attack by accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor. *Id.* On the other hand, with "a factual Rule 12(b)(1) attack, however, a court may look beyond the complaint to matters of public record without having to convert the mo-tion into one for summary judgment." *White*, 227 F.3d at 1242 (citations omitted). In response, Plain-tiffs must support their "jurisdictional allegations with 'competent proof,' […] under the same eviden-tiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (citations omit-ted). They must prove "by a preponderance of evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* The district court generally resolves any factual disputes itself. *Id.* at 1122.

In this case, Defendants request that this Court take judicial notice, under Federal Rule of Evidence 201, of Attorney General Opinion No. 23-04, which is attached to the Declaration of Coun-sel filed concurrently with this memorandum. *See* Counsel Decl. Ex. A. (The Court can accurately and readily determine the accuracy of Opinion No. 23-04 as it is also available at the Attorney General's website.) This Opinion is a public record, issued by the State of Idaho's elected Attorney General, under his authority recognized in Idaho Code § 67-1401(6). This Opinion, although not binding on Idaho's courts, informs Idaho's courts and is "entitled to consideration" when examining a statute on which the Idaho Supreme Court has not yet considered. *Cf. Echo Ranch, Inc. v. State*, 107 Idaho 808, 811, 693 P.2d 454, 457 (1984). Under the standard in *White*, Defendants' Rule 12(b)(1) challenge is considered a factual attack.

Defendants may attack the legal sufficiency of a complaint by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint based on either (i) "a lack of cognizable legal theory" or (ii) "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (citation omitted). A complaint must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (cleaned up). "Although for the purposes of this motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [the Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor should the Court accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"When ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice." *Nissou-Rabban v. Capital One Bank (USA), NA*, 285 F. Supp. 3d 1136, 1146 (S.D. Cal. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001)). Here, Defendants are requesting that the Court take judicial notice of Attorney General Opinion No. 23-04. The Court may properly consider that Opinion when ruling on the Rule 12(b)(6) motion because the Opinion is a matter of public record, and it was released under the authority recognized in Idaho Code § 67-1401(6) for Idaho's Attorney General to provide formal opinions on request from an Idaho Representative.

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613, 635 (9th Cir. 2021) (internal quotations omitted, emphasis removed). To obtain this extraordinary relief, Plaintiffs must show (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm without injunctive relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Likelihood of success on the merits is the most important factor." *Fraihat*, 16 F.4th at 635 (internal quotations and citation omitted). A "possibility" of irreparable injury is not sufficient, rather plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A court cannot grant a preliminary injunction if it lacks subject matter jurisdiction or personal jurisdiction. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868); *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999).

Defendants, for the reasons above, request that the Court take judicial notice, under Federal Rule of Evidence 201, of Attorney General Opinion No. 23-04, as it considers Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

### I.   Plaintiffs lack standing.

Standing is a necessary predicate to federal subject matter jurisdiction under Article III. *Cetacean Comm. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). If a plaintiff has not alleged an injury in fact sufficient to invoke federal jurisdiction, "the suit should be dismissed under [Federal Rule of Civil Procedure] 12(b)(1)." *Id.*

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he irreducible constitutional minimum of standing

contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Injury in fact must be not only particularized but also concrete, "that is, it must actually exist." *Id.* at 340.

   a. **Plaintiffs have not suffered an injury in fact because there is no credible threat of prosecution.**

   The first prong that Plaintiffs must show to establish standing is that they must have suffered an injury in fact. An alleged injury arising out of the enforcement of a law against a plaintiff requires a plaintiff to allege an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and … a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 160 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). To successfully plead a credible threat of prosecution, the Ninth Circuit considers three things: "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996)).

   A "fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach." *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) (citation omitted). Where a statute is inapplicable to the plaintiffs, "either by its terms or as interpreted by the government," that "inapplicability weighs against both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them." *Id.* at 786.

   Plaintiffs have not pled an intent to violate the law, and therefore cannot meet the first prong to establish an injury. This is because the challenged law does not apply to their intended conduct. The challenged statute states in relevant part that public funds may not be used "in any way to provide,

perform, or induce an abortion; assist in the provision or performance of an abortion; promote abortion; counsel in favor of abortion; refer for abortion; or provide facilities for an abortion or for training to provide or perform an abortion." Idaho Code § 18-8705(1). It prohibits the use of tuition to "pay for an abortion, provide or perform an abortion, provide counseling in favor of abortion, make a referral for abortion, or provide facilities for an abortion or for training to provide or perform abortion." Idaho Code § 18-8706. It is, at most, the prohibitions on "counselling in favor of" or "to promote" abortion that are at issue here. *See e.g.,* Dkt. 1 at ¶¶ 3, 7, 30, 33.

Plaintiffs' planned activities do not violate the statute. First, as shown above and discussed below, the plain language of the statute does not encompass academic teaching or scholarship. *See also Elsaesser v. Gibson*, 168 Idaho 585, 593, 484 P.3d 866, 874 (2021) ("Interpretation of a statute begins with its plain language."). Second, even though the Idaho Supreme Court has not yet interpreted the Statute, Idaho's elected Attorney General has in a formal, published opinion issued under his authority to answer official requests for advice. Idaho Code § 67-1401(6). As the Attorney General's Opinion points out, "under a plain language interpretation of the Act applying appropriate canons of statutory construction, the Act does not prohibit university employees from speaking on abortion in their academic teaching or scholarship, even if that teaching or scholarship could be viewed as supporting abortion or abortion rights in general." Opinion No. 23-04 at 1, Counsel Decl. Ex. A. Thus, the statute as "interpreted by the government" does not apply to Plaintiffs' conduct, and they cannot show that they intend to violate the law. *Lopez*, 630 F.3d at 786.

The second prong of the test for determining whether there is a credible threat of prosecution is whether "prosecuting authorities have communicated a specific warning or threat to initiate proceedings." *Thomas*, 220 F.3d at 1139. While there is no requirement for "plaintiffs to await arrest or prosecution before entertaining a challenge to the constitutionality of a statute, the threat of enforcement must at least be credible, not simply imaginary or speculative." *Thomas*, 220 F.3d at 1140 (internal

quotations and citations omitted). "When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court." *Id.* (internal quotations and citation omitted).

In the instant case, Plaintiffs have not alleged that they have been threatened with prosecution. The best that Plaintiffs can come up with to allege a specific threat of prosecution is that "no County Prosecuting Attorney has responded" to letters sent by the ACLU to the county prosecutors asking for "assurances" that the prosecutors will not prosecute university faculty for "teaching, scholarship, and public speech that presents ideas that favor or promote abortion." Dkt. 1 at ¶¶ 55-56 (internal quotations omitted). But the silence of county prosecutors is not a threat. Even if the county prosecutors had made "general threat[s] … to enforce those laws which they are charged to administer," this would not be enough for standing. *Lopez*, 630 F.3d at 787 (quoting *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 88 (1947)). Silence cannot create an injury where audible threats could not. Merely feeling "inhibited" in teaching or advocacy, is also not enough. *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). To the extent that Plaintiffs rely on "inhibition" resulting from silence, this is not an injury that a federal court can recognize as concrete.

Rather, it appears that the Plaintiffs' imagined fear of prosecution comes not from Defendants in the case, but from guidance from Plaintiffs' employers—who are not even parties to this proceeding. *See* Dkt. 1 at ¶¶ 38-54. Plaintiffs cite memoranda produced by various counsel for Idaho colleges and universities. But these memoranda are not an interpretation of what conduct is prohibited by anyone with authority to prosecute violations. *See* Dkt. 2-1 at 17; Dkt. 2-3 at 2–3; Dkt. 2-4 at 2 (acknowledging the University of Idaho "does not impose criminal charges nor conduct criminal investigations"); Dkt 2-5 at 3 (discussing "level[s] of risk"); Dkt. 2-6 (Boise State counsel stating that schol-

arship "may" be protected). To the extent that Plaintiffs speculate about future prosecution, that im-

agined fear cannot be attributed to Defendants' conduct. If Plaintiffs want to contest the guidance

issued by their employers, their remedy is to take that up with those universities, not to file a federal

lawsuit against Defendants imagining a threat of prosecution that does not exist.

Plaintiffs in the instant case have simply imagined and speculated about a future prosecution.

As in the *Thomas* case, "the record is devoid of any threat—generalized or specific—directed to-

ward[s]" Plaintiffs. *Thomas*, 220 F.3d at 1140. Additionally, the law, "as interpreted by the govern-

ment," is inapplicable to Plaintiffs' intended conduct, which "weighs against … their claims that the

government intends to enforce the law against them." *Lopez*, 630 F.3d at 786. Plaintiffs have failed to

show that Defendants intend to enforce the law against Plaintiffs, and have therefore failed to meet

the second element of showing a credible threat of prosecution.

The third factor for determining whether there is a credible threat of prosecution is to consider

the history of past prosecution or enforcement under the challenged statute. *Thomas*, 220 F.3d at 1139.

The Act has been in effect since May 10, 2021. Dkt. 1 at ¶ 28. Plaintiffs have not alleged a single

prosecution under the act, and have not shown that the act has ever been enforced against people

similarly situated as Plaintiffs, or at all for that matter. Thus, they have also failed to meet the third

prong of the applicable test.

Plaintiffs have failed to meet their burden on all three prongs of the test for determining

whether there is a credible threat of prosecution, and have therefore failed to show an injury in fact.

Plaintiffs lack standing, and the Court should dismiss Plaintiff's Complaint.

### b. Plaintiffs have not pled an injury that is traceable to the challenged conduct of Defendants.

To have standing, Plaintiffs must also show that their alleged injury "is fairly traceable to the

challenged conduct of the defendant." *Spokeo*, 578 U.S. at 338. As stated above, Defendants have done

nothing to injure Plaintiffs. Rather, Plaintiffs' fear of prosecution comes from guidance from their

employers. *See* Dkt. 1 at ¶¶ 38-54; Dkt. 2-1 at 17-18; Dkt. 2-3; Dkt. 2-4; Dkt 2-5; Dkt. 2-6. Additionally, Defendant Labrador has stated in no uncertain terms that the law does *not* apply to Plaintiffs' pled conduct. *See* Opinion No. 23-04. And as Plaintiffs acknowledge, the county prosecutors have said nothing that could be traced to them. Dkt. 1 at ¶ 56. Since Defendants have not successfully pled that their alleged injury is caused by Defendants, they lack standing.[1]

### c.  Union Plaintiffs lack associational and organizational standing.

Union Plaintiffs, in addition to suing on behalf of their members, also sue on their own behalf. *See* Dkt. 1 at ¶¶ 94-100. The associational standing fails for the reasons described *supra*: Because their members cannot sue, neither than they. *See Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006); *see also Nā Po'e Kōkua v. Bank of America Corp.*, No. 22-00238. 2023 WL 2042923 at *3 (D. Haw. 2023) (slip copy) (distinguishing between associational standing as "third-party standing" and organizational standing as "first-party standing"). To sue as an organization, Union Plaintiffs must establish "both a diversion of its resources and frustration of its mission." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). Union Plaintiffs "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). An organization "must instead show that *it* would have suffered some other injury if it had not diverted resources to counteracting the problem." (emphasis added).

Union Plaintiffs cannot show organizational standing. First, because the Act, by its plain language, does not cover the academic teaching or scholarship for which these Union Plaintiffs are concerned, there is no basis to conclude they would have standing—they cannot manufacturer standing

---

[1] The standing analysis for Defendants Thompson and Herzog is largely the same as for Defendant Bennetts.  Defendants Thompson and Herzog agree with Defendant Bennett's county prosecutor-specific arguments related to standing as set forth in Defendant Bennetts' Memorandum in Support of Ada County Prosecuting Attorney Jan M. Bennetts' Motion to Dismiss, Dkt. 38-1.

where there is no problem affecting their organization. *City of Lake Forest*, 624 F.3d at 1088. There is also no traceable connection between a supposed injury and Defendants' actions—again, because the statute does not cover academic teaching or scholarship, and because no Defendant has taken, let alone, threatened action against them. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 (1982). Second, Union Plaintiffs have also not alleged "some other injury." They have pled that they (and one of the members acting as president) have expended time and "resources" otherwise undefined, researching the law and guiding members. Dkt. 1 at ¶¶ 96, 97, 98. It is not enough to plead diversion of resources; Union Plaintiffs were required to plead a diversion that averted *some other harm to their mission*.[2] They have not pled such a diversion, and do not describe how the challenged Act impacts them as organizations, rather than as representatives of their members. To the extent that they have undertaken additional research or communication efforts, they have not done so to avert harm to an institutional mission pled in the Complaint. They therefore lack organizational standing.

## II. Plaintiffs fail to state a claim and thus lack a likelihood of success on the merits.

### a. Plaintiffs' first claim for relief fails because the Act does not prohibit Plaintiffs' pled conduct which they claim is protected by the First Amendment.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In the instant case, Plaintiffs' alleged claim of misconduct on the part of Defendants is that the Act, as applied,

---

[2] This Court is still bound to apply *City of Lake Forest. See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003). While organizational standing in the Ninth Circuit is in an "entirely convoluted state," such that its analysis is left "to the whims of the panel draw," the *City of Lake Forest* decision has not been overruled by an en banc court. *See Southwest Fair Housing Council v. WG Scottsdale LLC*, No. 22-16345, 2023 WL 6820681, at *2–*3 (9th Cir. Oct. 17, 2023) (Bumatay, J., concurring) (memorandum); *see also Miller*, 335 F.3d at 899.

"imposes a broad, prospective, content-based, and viewpoint-based restriction on academic speech." Dkt. 1 ¶ 106, Prayer for Relief "A". However, the Act does not do what Plaintiffs claim. Since the Act does not do what Plaintiffs claim, their claim of misconduct fails. Since their claim of misconduct fails, their claim lacks facial plausibility, and therefore fails to state a claim. Because it fails to state a claim, it is also clear that they are not likely to succeed on the merits of their claim.

More specifically, Plaintiffs' first claim for relief alleges that the Act "violates the First Amendment by prohibiting … Plaintiffs … from engaging in constitutionally protected speech—and from expressing a particular viewpoint—under the threat of criminal penalties." Dkt. 1 ¶ 103. They claim this is so because the Act "prohibit[s] … any speech by a public employee—including academic instruction, discussion, and research at Idaho's public universities—that expresses a viewpoint favorable to abortion." *Id.* at ¶ 1. Plaintiffs are wrong. Rather, the "plain text of the Act does not prohibit public university employees from engaging in speech relating to academic teaching and scholarship that could be viewed as supporting abortion." Opinion No. 23-04 at 7, Counsel Decl. Ex. A.

The Court's role "when interpreting a state statute as a matter of first impression is to determine what meaning the state's highest court would give to the law." *Brunozzi v. Cable Communications, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (internal quotations and citation omitted). Thus, the Court "must follow the state's rules of statutory interpretation." *Id.* (internal quotations and citation omitted).[3]

---

[3] Defendant Labrador, in his official AG Opinion No. 23-04, interpreted the Act using Idaho's rules of statutory interpretation. The following argument largely comes from that opinion. For ease of reading, and since it comes from Defendant Labrador, the language will not be quoted, and repeated citations to the opinion will not be used. Minor changes from the opinion to fit the context of this brief will not be noted.

When engaging in statutory interpretation, the objective "is to derive the intent of the legisla-tive body that adopted the act." *Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017). As the Idaho Supreme Court has explained,

> [s]tatutory interpretation … begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, super-fluous, or redundant. When the statutory language is unambiguous, the clearly ex-pressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Id.* (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). In addition, it must be presumed that the legislature was aware of all applicable legal precedent existing at the time the statute was passed. *Twin Lakes Canal Co. v. Choules*, 151 Idaho 214, 218, 254 P.3d 1210, 1214 (2011). In con-sidering a challenge to a statute's constitutionality, Idaho's courts will adopt an interpretation that upholds the validity of the statute. *See Cowles Pub. Co. v. Magistrate Court of the First Jud. Dist.*, 118 Idaho 753, 759, 800 P.2d 640, 646 (1990); *cf. Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (a statute will be upheld if it is readily susceptible to a narrowing construction).

The plain text of the Act does not prohibit public university employees from engaging in speech relating to academic teaching and scholarship that could be viewed as supporting abortion. The Act prohibits the use of public funds to "promote abortion" and to "counsel in favor of abor-tion." These restrictions are perfectly acceptable in the context of public funds. *Cf Rust*, 500 U.S. at 192–200 (considering proscription against activities that "encourage, promote or advocate abortion" that included "counseling, referral, and the provision of information regarding abortion"). The plain meaning of these terms does not prohibit professors from speaking on abortion in their teaching and scholarship, even if that teaching or scholarship could be viewed as supporting abortion.

"Counsel" is defined, in part, as "advice, esp. that given formally." *Counsel*, The New Oxford American Dictionary (2001). In the context of the Act, which is designed to prohibit the use of public

funds for abortion, the plain meaning of the term "counsel" must refer to the counsel or advice one person gives to another person asking for advice or help with a specific situation. Academic teaching about abortion, discussing the arguments some have advanced in favor of abortion within the academic environment, and conducting academic scholarship relating to abortion would not be impacted by the term "counsel in favor of abortion," since those activities do not relate to counseling a specific person in a specific circumstance in favor of abortion. Thus, a professor might violate the Act by advising a specific student during office hours to obtain an abortion, which the State may proscribe, *Rust*, 500 U.S. at 198. But a professor would not violate the Act by discussing abortion in a favorable manner in class or in scholarship.

The term "promote" sometimes has a more generalized meaning than "counsel," being defined as "further the progress of (something, esp. a cause, venture, or aim); support or actively encourage." *Promote*, The New Oxford American Dictionary 1364 (2001). However, "promote" can also have a meaning similar to the meaning of "counsel" discussed above. In *U.S. v. Williams*, 553 U.S. 285, 300 (2008), the U.S. Supreme Court held that the term "promotes," in a statute criminalizing the pandering of child pornography, "does not refer to abstract advocacy, such as the statement 'I believe that child pornography should be legal' or even 'I encourage you to obtain child pornography.'" Rather, the term "refers to the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer." *Id.* The Court held that the statute which, among other things, prohibited the promotion of child pornography, "falls well within constitutional bounds." *Id.* at 299.

The use of "promote" in the Act should be interpreted in the same manner as the U.S. Supreme Court did in *Williams*. Just as the term "promote," as used in the federal statute prohibiting the pandering of child pornography does not "refer to abstract advocacy," the term "promote" in the Act also does not refer to the abstract teaching and scholarship of abortion conducted by university pro-

fessors. Rather, teaching and scholarship are critical to fulfill the ideals set forth in cases such as *Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 603 (1967) ("The Nation's future depends upon leaders trained through wide exposure to [the] robust exchange of ideas[.]") and *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021) (noting that the "need for the free exchange of ideas in the college classroom is unlike that in other public workplace settings"). These ideals—helping to train our Nation's future leaders, encouraging the robust exchange of ideas, helping students to learn how to think critically—are not inhibited by the Act. What is prohibited is contribution, on state time and money, to specific efforts to facilitate specific abortions. This is constitutional. *Cf. Rust.* The most reasonable construction of the Act is that it does not penalize the critical discussion of, or even favorable coverage of abortion within the context of academic teaching and scholarship.

Thus, based on the plain language of the Act, the Act does not prohibit the pled conduct of Plaintiffs. As the State is not penalizing through the Act Plaintiffs' academic teaching or scholarship, the State is not taking any action against Plaintiffs that would run afoul of the First Amendment applied to the states through the Fourteenth Amendment. Plaintiffs have therefore failed to state a claim upon which relief may be granted. They also lack a likelihood of success.

### b. Plaintiffs' second claim for relief fails because the Act is not unconstitutionally vague.

Plaintiffs' second claim for relief argues that the Act is unconstitutionally vague because it "fails to provide fair notice about what speech is prohibited and, in particular, what section 18-8705 means when it prohibits using public funds to ' promote abortion' or 'counsel in favor of abortion.'" Dkt. 1 ¶ 109. They also contend that the Act allows "nearly unfettered discretion" and "invites arbitrary and discriminatory enforcement." Dkt. 1 ¶ 110. Neither assertion is correct, and so this claim also fails.

*First,* a statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). This Court can look to contemporary dictionaries to resolve challenges on vagueness grounds. *U.S. v. Reliant Energy Servs., Inc.*, 420 F. Supp. 2d 1043, 1055 (N.D. Cal. 2006) (citing *United States v. Auginash*, 266 F.3d 781, 784–85 (8th Cir. 2001)).

As discussed in detail above, the common, well-understood meanings of "counsel" and "promote" give clear notice of what is prohibited: advising a specific person in a specific situation as to a specific course of conduct favoring abortion. Academic speech about abortion in the context of academic teaching or scholarship at an institution of higher education is not included under the plain meaning of the statutes. Further, the U.S. Supreme Court has interpreted the term "promote" in the context of a criminal statute, and rejected a void for vagueness challenge to a law using the term "promote." *Williams*, 553 U.S. at 300, 305–06.[4] Plaintiffs cite no case that holds that these words in themselves are unconstitutionally vague—and indeed, they cite *Williams*, 553 U.S. at 306, which rejected a vagueness challenge to a statute that used the term "promotes." Dkt. 2-1 at 15. A reasonable person can understand exactly what is meant in context. Therefore, a reasonable person has fair notice of what is prohibited.

In sum, the Act provides reasonable notice that what is proscribed is the counsel or advice in favor of abortion a state employee gives to another person asking for advice or help with a specific situation, i.e., to counsel in favor of abortion. It also provides reasonable notice that a state employee

---

[4] It is notable that the challenge on vagueness grounds to the statute at issue in *Williams*, as addressed by the U.S. Supreme Court, was not to the use of the term "promote," but the use of the phrases "in a manner that reflects the belief," and "in a manner that is intended to cause another to believe." *Williams*, 553 U.S. at 304–05 (cleaned up). Thus, one can infer that in that case the use of the term "promote" was clear enough to not even be challenged on vagueness grounds.

may not utilize specific efforts to facilitate a specific abortion. Academic teaching and scholarship do not fall within these categories.

*Second,* the Act does not vest prosecutors with unbridled enforcement discretion for the very reason that the Act plainly states what it covers. *See Kashem v. Barr,* 941 F.3d 358, 374 (9th Cir. 2019). Again, this Court can resort to dictionary definitions to assure itself of the scope of the law. *See Betancourt v. Bloomberg*, 448 F.3d 547, 553–54 (2d Cir. 2006). What is required of a law are "minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). Here, again, the plain language of the statute contains words susceptible to definition with no elements that provide additional authority to enforcing officers, beyond what is necessary for *any* police judgment. An enforcing official knows what "to promote" means as a matter of law, and what "to counsel" means in ordinary parlance—and if he is unsure, he has the Opinion of the Attorney General for further clarity. "As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). In the absence of any internal inconsistency or invitation for officers to insert their whims into enforcement decisions, *see Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965), there is nothing but the ordinary use of words to guide enforcement decisions. *Grayned*, 408 U.S. at 110, n.15.

*Third*, as discussed above, Plaintiffs' claims fail as to the specific conduct (as-applied challenges) they allege. This should doom their facial vagueness challenge to the Act as well, as they do not assert a facial overbreadth claim. *Cf. New York v. Ferber*, 458 U.S. 747, 767 (1982) ("The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.") (citations omitted). Their facial vagueness claim also fails even if it were analyzed.

In the Ninth Circuit, a law survives a facial vagueness challenge even where there is "uncertainty at a statute's margins" where it is clear what the statute proscribes "in the vast majority of its

applications." *See Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). That is true of the Act's prohibitions in Idaho Code § 18-8705. They proscribe the use of public funds to (i) provide, perform, or induce an abortion; (ii) assist in the provision or performance of abortion; (iii) promote abortion; (iv) counsel in favor of abortion; (v) refer for abortion; and (vi) provide facilities for an abortion or for training to provide or perform an abortion. Public employees and agencies are on fair notice of what conduct is prohibited in *at least* the vast majority of the law's intended applications. Further, that section also has clearly defined carve-outs. Idaho Code § 18-8705(4)(a)–(c). Public employees, for instance, will generally understand that they cannot use public funds to perform abortions or provide facilities where an abortion would be performed. Given the clear proscriptions in Idaho Code § 18-8705, the definitions in Idaho Code § 18-8702, and common sense, the Act is *not* unconstitutionally void for vagueness. Plaintiffs' facial claim fails as a matter of law. Plaintiffs also lack a likelihood of success on this claim.

### III.   The remaining factors do not support a preliminary injunction.

#### a.   Plaintiffs are not likely to suffer irreparable harm.

To obtain a preliminary injunction, Plaintiffs must show that they are likely to suffer irreparable harm without injunctive relief. *Winter*, 555 U.S. at 20. A "possibility" of irreparable injury is not sufficient, rather plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22. (emphasis in original).

Plaintiffs claim that they will be harmed because they cannot teach classes as they wish without fear of being criminally prosecuted. Dkt. 2-1 at 18–19. However, since Plaintiffs' alleged conduct is not prohibited by the plain language of the statute, there is no harm. *See Lopez*, 630 F.3d at 787 (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)) (allegations of a mere "subjective 'chill'" are not enough to demonstrate harm). To the extent that there is a chill, that chill is traceable to Plaintiffs' subjective

perceptions of the law's reach and arises from the statements of their own counsel—not Defendants' conduct. Thus, Plaintiffs cannot prove that they will be injured.

  **b.  The balance of equities does not favor Plaintiffs and an injunction is not in the public interest.**

  The last two factors the Court weighs in determining whether to issue a preliminary injunction are whether the balance of equities weighs in favor of an injunction and whether an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiffs must meet all four elements of the test for a preliminary injunction. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (stating that the U.S. Supreme Court requires a plaintiff seeking a preliminary injunction "to make a showing on all four prongs" of the test). Where, as here, "the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

  Plaintiffs' only claim on these last two issues is their alleged First Amendment violation. *See* Dkt. 2-1 at 19–20. However, as discussed above, there is no First Amendment violation since Plaintiffs' alleged conduct is not prohibited by the statute.

  By contrast, the government suffers a form of irreparable harm when "a State is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). As the Ninth Circuit has recognized, "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (per curiam) (quoting *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)). Here, where Plaintiffs suffer no cognizable injury, the only irreparable harm before the Court would be one created by an injunction. Similarly, the ability of a state to enforce its duly enacted legislation is equally within the public interest. *See Golden Gate Restaurant Ass'n v. City and Cnty. of S.F.*, 512 F.3d 1112, 1126–27 (9th Cir. 2008).

Since Plaintiffs' alleged conduct is not prohibited by the statute, and since enjoining the statute harms the State's interests in enforcing its duly enacted statutes, the balance of equities and the public interest lie in Defendants' favor.

### CONCLUSION

For the foregoing reasons, the Court should deny the request for preliminary injunction and grant the motion to dismiss.

DATED: November 2, 2023.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By:   /s/ Brian V. Church
　　　BRIAN V. CHURCH
　　　Deputy Attorney General

*Attorney for Defendants Raúl Labrador,
Stephen F. Herzog, and Bill Thompson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Erika Birch
erika@idahojobjustice.com

Samir Deger-Sen
samir.deger-sen@lw.com

Danielle Conley
danielle.conley@lw.com

Margaret A. Upshaw
maggie.upshaw@lw.com

Cherish A. Drain
cherish.drain@lw.com

Peter Trombly
peter.trombly@lw.com

Margaret Babad
molly.babad@lw.com

Scarlet Kim
scarletk@aclu.org

Andrew Beck
abeck@aclu.org

Elizabeth Gyori
egyori@aclu.org

Dina Flores-Brewer
dfloresbrewer@acluidaho.org

Amanda Barnett
amanda.barnett@lw.com

Seth Kreimer
skreimer@law.upenn.edu

Emily True
emily.true@lw.com


   /s/ *Brian V. Church*
BRIAN V. CHURCH
Deputy Attorney General