Erika Birch (ISB No. 7831)
Strindberg Scholnick Birch
  Hallam Harstad Thorne
American Civil Liberties Union of
  Idaho Foundation Cooperating Attorney
1516 W. Hays Street
Boise, Idaho 83702
Tel: (208) 336-1788
erika@idahojobjustice.com

Danielle Conley*
Margaret A. Upshaw*
Cherish A. Drain*
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2200
Fax: (202) 637-2201
danielle.conley@lw.com
maggie.upshaw@lw.com
cherish.drain@lw.com

Scarlet Kim*
Andrew Beck*
Vera Eidelman*
Elizabeth Gyori*
American Civil Liberties
  Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Fax: (212) 549-2649
scarletk@aclu.org
abeck@aclu.org
egyori@aclu.org

Samir Deger-Sen*
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
samir.deger-sen@lw.com

*Attorneys for Plaintiffs*

*Admitted pro hac vice*

*Additional attorneys listed on next page*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## SOUTHERN DIVISION

IDAHO FEDERATION OF TEACHERS et al.,

*Plaintiffs*,

v.

RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.,

*Defendants.*

Case No. 1:23-cv-353-DCN

**COMBINED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BENNETTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Peter Trombly*
Margaret Babad*
Emily True*
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
peter.trombly@lw.com
molly.babad@lw.com
emily.true@lw.com

Marissa Marandola*
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
marissa.marandola@lw.com

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
  Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

Amanda Barnett*
Latham & Watkins LLP
355 S. Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: (213) 485-1234
Fax: (213) 891-8763
amanda.barnett@lw.com

Seth Kreimer*
3501 Sansom St.
Philadelphia, PA
skreimer@law.upenn.edu

*Admitted pro hac vice

Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 4

ARGUMENT ............................................................................................................................... 5

I.      Defendant Bennetts' Standing and Ripeness Challenges Are Meritless ........................... 5

     A.      Plaintiffs Have Standing to Challenge the NPFAA ................................................ 5

          1.      Plaintiffs Are Injured by the Threat of Prosecution in Ada County .......... 6

              a.      Plaintiffs Have Engaged in Past Speech Proscribed by the NPFAA, and Would Do So Again but for the NPFAA ................ 7

              b.      Defendant Bennetts' Failure to Disavow Enforcement of the NPFAA Supports Injury ..................................................... 9

              c.      Enforcement History Has "Little Weight" for Recently Enacted Laws Like the NPFAA ........................................................ 11

          2.      The Threat of Enforcement Is Fairly Traceable to Defendant Bennetts ... 12

          3.      Plaintiffs' Requested Relief Would Redress Plaintiffs' Injury ................. 13

     B.      Plaintiffs' First Amendment Claims Are Ripe for Resolution ............................. 13

II.     The Complaint States a Claim Against Defendant Bennetts .......................................... 15

     A.      Plaintiffs State a Valid Section 1983 Claim ....................................................... 15

     B.      Plaintiffs' Pursuit of As-Applied and Facial Challenges Does Not Warrant Dismissal of Any Claim Against Defendant Bennetts .......................................... 18

III.    Defendant Bennetts Has Waived Any Argument Against Preliminary Injunctive Relief .................................................................................................................................. 20

CONCLUSION ......................................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta-Huerta v. Estelle*,
 7 F.3d 139 (9th Cir. 1992) ........................................................................................ 20

*Animal L. Def. Fund v. Otter*,
 44 F. Supp. 3d 1009 (D. Idaho 2014) ....................................................................... 14

*Arce v. Douglas*,
 793 F.3d 968 (9th Cir. 2015) ...................................................................................... 6

*Ariz. Att'ys for Crim. Just. v. Brnovich*, No. 20-16293,
 2021 WL 3743888 (9th Cir. Aug. 24, 2021) ............................................................. 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................... 8

*Ass'n of Irritated Residents v. EPA*,
 10 F.4th 937 (9th Cir. 2021) ..................................................................................... 14

*Babbitt v. United Farm Workers Nat'l Union*,
 442 U.S. 289 (1979) ................................................................................................. 6, 9

*BankAmerica Pension Plan v. McMath*,
 206 F.3d 821 (9th Cir. 2000) .................................................................................... 20

*Bennett v. Fed. Savs. Bank*, No. 2:23-cv-00155-DCN,
 2023 WL 5401373 (D. Idaho Aug. 21, 2023) ............................................................. 5

*Bland v. Fessler*,
 88 F.3d 729 (9th Cir. 1996) ...................................................................................... 10

*Bogan v. Scott-Harris*,
 523 U.S. 44 (1998) .................................................................................................... 18

*Buffin v. California*,
 23 F.4th 951 (9th Cir. 2022) ..................................................................................... 17

*Cal. Pro-Life Council, Inc. v. Getman*,
 328 F.3d 1088 (9th Cir. 2003) ............................................................................... 6, 10

*Cal. Trucking Ass'n v. Bonta*,
 |996 F.3d 644 (9th Cir. 2021) ................................................................................... 10

*California v. Texas*,
 141 S. Ct. 2104 (2021) .............................................................................................. 13

*Carter v. City of Philadelphia*,
 181 F.3d 339 (3d Cir. 1999) ..................................................................................... 17

*Chaudhry v. Aragón*,
 68 F.4th 1161 (9th Cir. 2023) ................................................................................... 15

*Colwell v. Bannister*,
 763 F.3d 1060 (9th Cir. 2014) ..................................................................... 16

*Connick v. Thompson*,
 563 U.S. 51 (2011) ........................................................................................ 17

*Dobbs v. Jackson Women's Health Org.*,
 142 S. Ct. 2228 (2022) ................................................................................. 12

*Echols v. Parker*,
 909 F.2d 795 (5th Cir. 1990) ....................................................................... 17

*Freedom to Travel Campaign v. Newcomb*,
 82 F.3d 1431 (9th Cir. 1996) ....................................................................... 14

*Harris v. Amgen, Inc.*,
 573 F.3d 728 (9th Cir. 2009) ......................................................................... 5

*Hecox v. Little*,
 479 F. Supp. 3d 930 (D. Idaho 2020) ............................................................ 4

*Isaacson v. Mayes*,
 84 F.4th 1089 (9th Cir. 2023) ............................................................... passim

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005) ....................................................................... 4

*Leite v. Crane Co.*,
 749 F.3d 1117 (9th Cir. 2014) ....................................................................... 4

*Libertarian Party of L.A. Cnty. v. Bowen*,
 709 F.3d 867 (9th Cir. 2013) ....................................................................... 11

*LSO, Ltd. v. Stroh*,
 205 F.3d 1146 (9th Cir. 2000) ............................................................... 10, 11

*McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*,
 226 F.3d 429 (6th Cir. 2000) ....................................................................... 19

*Mecinas v. Hobbs*,
 30 F.4th 890 (9th Cir. 2022) .......................................................................... 8

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
 436 U.S. 658 (1978) ...................................................................................... 17

*Moore v. Urquhart*,
 899 F.3d 1094 (9th Cir. 2018) ..................................................................... 16

*Olsen v. City of Boise*, No. 1:20-cv-00478-DCN,
 2022 WL 3042982 (D. Idaho Aug. 2, 2022) ............................................... 18

*Perlot v. Green*,
 609 F. Supp. 3d 1106 (D. Idaho 2022) ........................................................... 5

*Picard v. Magliano,*
   42 F.4th 89 (2d Cir. 2022) ................................................................ 16

*Planned Parenthood Great Nw. v. Labrador*, No. 1:23-cv-142-BLW,
   2023 WL 4864962 (D. Idaho July 31, 2023) ............................... 14, 17

*Planned Parenthood of Idaho, Inc. v. Wasden,*
   376 F.3d 908 (9th Cir. 2004) ........................... 12, 13, 16, 19

*Proj. Veritas v. Schmidt,*
   72 F.4th 1043 (9th Cir. 2023) ............................................................ 16

*Riley's Am. Heritage Farms v. Elsasser,*
   32 F.4th 707 (9th Cir. 2022) .............................................................. 16

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,*
   44 F.4th 867 (9th Cir. 2022) .............................................................. 20

*Soo Line R.R. Co. v. Consol. Rail Corp.,*
   965 F.3d 596 (7th Cir. 2020) ............................................................. 20

*State v. Baker,*
   322 P.3d 291 (Idaho 2014) ................................................................ 17

*Steffel v. Thompson,*
   415 U.S. 452 (1974) ............................................................................ 7

*Sullivan v. Ferguson,*
   636 F. Supp. 3d 1276 (W.D. Wash. 2022) ......................................... 12

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ................................................................. 5, 9, 14

*Tingley v. Ferguson,*
   47 F.4th 1055 (9th Cir. 2022) ..................................................... passim

*Twitter, Inc. v. Paxton,*
   56 F.4th 1170 (9th Cir. 2022) ............................................................ 14

*United States v. Smith,*
   506 F. App'x 600 (9th Cir. 2013) ...................................................... 20

*Universal Life Church Monastery Storehouse v. Nabors,*
   35 F.4th 1021 (6th Cir. 2022) ............................................................ 16

*Wolfson v. Brammer,*
   616 F.3d 1045 (9th Cir. 2010) ........................................................... 14

**Statutes**

42 U.S.C. § 1983 .................................................................... 15, 16

Idaho Code § 18-5702 ................................................................. 2

Idaho Code § 18-8705(1) ............................................................................................ 2

Idaho Code § 18-8705(2) ............................................................................................ 2

Idaho Code § 31-2227 ................................................................................................. 2

Idaho Code § 31-2227(1) ........................................................................................... 12

Idaho Code § 31-2604(2) ............................................................................................ 2

Idaho Code § 18-8709 ................................................................................................. 2

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 4

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 5

Fed. R. Civ. P. 15(a)(2) .............................................................................................. 8

## INTRODUCTION

Defendant Jan Bennetts' motion to dismiss boils down to the contention that Plaintiffs cannot sue her because she has yet to prosecute anyone in Ada County under the No Public Funds for Abortion Act ("NPFAA"), a broad, prospective, and viewpoint-discriminatory prohibition on speech that has chilled academic discussion about abortion across Idaho's public universities. She is wrong. Longstanding Supreme Court and Ninth Circuit precedent dictate that Plaintiffs, who include professors teaching at Boise State University, located in Ada County, may bring this action against Defendant Bennetts because she is a prosecutor charged by statute with enforcing the NPFAA against them and has steadfastly refused to disavow such enforcement.

Plaintiffs have standing to challenge the NPFAA's prohibitions on academic speech about abortion. Plaintiffs have suffered an injury in fact because they fear a credible threat of enforcement. Their fear of prosecution is eminently reasonable in light of Defendant Bennetts' refusal to disavow enforcement of the NPFAA's criminal penalties against professors for academic speech about abortion. Moreover, as the Complaint extensively details, Plaintiffs who teach at Boise State University have been chilled in their teaching and scholarship on abortion because of their fear of criminal prosecution under the NPFAA. And because Defendant Bennetts has primary authority to enforce the NPFAA against Plaintiffs in Ada County and an injunction would prevent her from exercising this authority, Plaintiffs readily satisfy the traceability and redressability requirements of the standing inquiry.

Defendant Bennetts' remaining arguments for dismissal are meritless. She contends that Plaintiffs fail to state a Section 1983 claim because she did not cause Plaintiffs' injury. But because she is an official empowered to enforce the NPFAA, a state criminal law, Defendant Bennetts is exactly the right defendant for a Section 1983 claim seeking to enjoin that statute's enforcement.

And Defendant Bennetts' assertion that the Complaint should be dismissed because it includes a facial challenge is devoid of legal support.

Finally, Defendant Bennetts has largely abandoned any substantive opposition to Plaintiffs' motion for preliminary injunctive relief by relying entirely on her motion to dismiss arguments and failing to address (1) Plaintiffs' likelihood of success on their First Amendment and Fourteenth Amendment claims; (2) Plaintiffs' likelihood of suffering irreparable harm; and (3) whether the balance of equities and the public interest favor an injunction. She has thus waived her opposition on these unaddressed issues.

This Court should therefore deny Defendant Bennetts' motion to dismiss and grant Plaintiffs' request for preliminary injunctive relief as to Defendant Bennetts.

## **BACKGROUND**

Under the No Public Funds for Abortion Act,

> No public funds . . . shall be used in any way to provide, perform, or induce an abortion; assist in the provision or performance of an abortion; *promote* abortion; *counsel in favor of* abortion; refer for abortion; or provide facilities for an abortion or for training to provide or perform an abortion.

Idaho Code § 18-8705(1) (emphasis added). The NPFAA also provides that "[n]o person" who "receives [public] funds may use those funds to . . . promote abortion." *Id.* § 18-8705(2). The NPFAA imposes criminal penalties for violating its restrictions, with public employees subject to misdemeanor or felony liability, imprisonment for up to fourteen years, fines of up to $10,000, termination from public employment, and restitution of "misused" public funds. *Id.* §§ 18-8709, 18-5702.

In Idaho, "the primary duty of enforcing all the penal provisions of any and all statutes of this state, in any court, is vested in the sheriff and prosecuting attorney of each of the several counties." Idaho Code § 31-2227; *id.* § 31-2604(2) (imposing on county prosecuting attorneys "the

duty" "to prosecute all felony criminal actions" and "all misdemeanor . . . actions for violation of all state laws"). The prosecuting attorney in Ada County is Defendant Bennetts. Compl. ¶ 25, Dkt. 1. She is thus primarily responsible for enforcing Idaho's criminal laws—including the NPFAA— in Ada County.

Ada County is home to Boise State University ("BSU"), a public university. *Id.* Fear that Defendant Bennetts will seek to enforce the NPFAA against academic speech has chilled the teaching and scholarship of faculty members at BSU. *Id.* ¶¶ 74, 77, 85, 89. Plaintiff Heather Witt, an Associate Professor of Social Work at BSU, exemplifies this chill. Because she fears prosecution under the NPFAA, Professor Witt has removed course materials, altered student writing assignments, and limited promotion of her scholarship. *Id.* ¶¶ 74, 85, 89. For example, Professor Witt removed a book chapter that she co-authored from her courses on human sexuality because she fears that discussion of the pro-choice argument in the chapter could be construed as promoting or counseling in favor of abortion in violation of the NPFAA. *Id.* ¶ 74 & n.1. For similar reasons, Professor Witt has removed prompts for student assignments that relate to abortion, including one that asked students to reflect on whether and when legal restrictions on abortion are appropriate in light of statistics regarding health risks associated with childbirth. *Id.* ¶ 85. And the NPFAA's penalties have made Professor Witt wary of promoting her academic scholarship related to abortion to BSU faculty, to her students, and via online platforms for academic scholarship. *Id.* ¶ 89.

Professor Witt is also a member of the Idaho Federation of Teachers ("State Federation"). *Id.* ¶ 22. The State Federation comprises three unions, including the Boise State University Federation of Teachers, Local 3537, and the individual members of those unions. *Id.* ¶ 13. Certain members of the State Federation who teach at BSU consider abortion an essential or relevant topic

to their courses but fear that continuing to teach and discuss abortion risks criminal prosecution under the NPFAA. *Id.* ¶¶ 15, 77. The threat that Defendant Bennetts will prosecute academic speech under the NPFAA has forced the State Federation to divert resources away from its mission of advocating for its members and toward responding to their concerns about prosecution. *Id.* ¶¶ 95–98.

In November 2022, the ACLU of Idaho sent Defendant Bennetts a letter "seek[ing] assurances that [she] will not pursue prosecutions against university faculty" for engaging in teaching, scholarship, and public speech "that presents ideas that favor or promote abortion." *Id.* ¶ 55. The letter included several examples of speech in which professors wished to engage, but which they feared would trigger prosecution, including presenting "quantitative and qualitative data on the benefits of abortion"; "positive discussion of policies, political movements, and laws supporting or highlighting the benefits of abortion"; and "literature or information promoting bodily autonomy, including abortion." Pls.' Mot. for Prelim. Inj. Ex. 7, at 3, Dkt. 2-7.[1] Defendant Bennetts did not respond to the ACLU of Idaho's letter. Compl. ¶ 56.

## LEGAL STANDARD

A court must deny a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) where the complaint alleges facts that are legally sufficient to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In resolving a challenge to subject-matter jurisdiction based on the face of the pleadings, a court "must 'accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'" *Hecox v. Little*, 479 F. Supp. 3d 930, 958 (D. Idaho 2020) (citation omitted).

---

[1] This Court may consider the letter's contents because they are alleged in the Complaint and Defendant Bennetts does not question the letter's authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

4

A court must deny a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where a complaint "contain[s] sufficient factual matter to state a claim to relief that is plausible on its face." *Bennett v. Fed. Savs. Bank*, No. 2:23-cv-00155-DCN, 2023 WL 5401373, at *2 (D. Idaho Aug. 21, 2023) (citation omitted). In considering a motion to dismiss for failure to state a claim, a court must "view the complaint in the light most favorable to the [plaintiff] and 'accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them.'" *Id.* (alteration in original) (citation omitted). Leave to amend should be granted unless there is no possibility that amendment would cure a deficiency in the complaint. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (citation omitted).

In deciding whether to grant a preliminary injunction, the Court must consider whether (1) Plaintiffs are likely to succeed on the merits; (2) Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in Plaintiffs' favor; and (4) an injunction is in the public interest. *Perlot v. Green*, 609 F. Supp. 3d 1106, 1115 (D. Idaho 2022) (citation omitted).

## **ARGUMENT**

## I.     **Defendant Bennetts' Standing and Ripeness Challenges Are Meritless**

### A.     **Plaintiffs Have Standing to Challenge the NPFAA**

To establish Article III standing, a plaintiff must allege facts showing injury in fact, traceability, and redressability. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157–58 (2014) (citation omitted). Plaintiffs have done so here by alleging (1) a credible threat of prosecution under an unconstitutional law in violation of their First and Fourteenth Amendment rights and consequent chilling of their protected academic speech, which (2) is fairly traceable to Defendant Bennetts, who is primarily responsible for enforcing the NPFAA in Ada County, and

which (3) would be redressed by an injunction preventing Defendant Bennetts from enforcing the NPFAA against Plaintiffs in Ada County.

### 1.    Plaintiffs Are Injured by the Threat of Prosecution in Ada County

A plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge [a] statute that he claims deters the exercise of his constitutional rights." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation omitted). Instead, a plaintiff may bring a pre-enforcement challenge seeking declaratory or injunctive relief where, as here, the plaintiff faces a "credible threat of prosecution." *Id.* Additionally, "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (citation omitted). "The unique standing considerations in the First Amendment context tilt dramatically towards a finding of standing when a plaintiff brings a pre-enforcement challenge." *Id.* (internal quotation marks & citation omitted); *see also, e.g.*, *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) (endorsing "hold your tongue and challenge now" approach to First Amendment standing). A similarly "broad[]" standard applies to pre-enforcement vagueness challenges "where the effect of a vague statute would infringe upon a [plaintiff's] First Amendment rights." *Arce v. Douglas*, 793 F.3d 968, 987–88 (9th Cir. 2015).

The Ninth Circuit evaluates three considerations when assessing whether there is a credible threat of enforcement: (1) "whether the plaintiff has a concrete plan to violate the law," including as evidenced by past acts; (2) whether the "circumstances amount[] to a credible threat of enforcement," which can include—but does not require—"a specific threat or warning of prosecution"; and (3) whether there is a relevant "history of past prosecution or enforcement." *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (citation omitted). Under binding precedent applying these factors, Plaintiffs have clearly alleged a cognizable injury.

a.   **Plaintiffs Have Engaged in Past Speech Proscribed by the NPFAA, and Would Do So Again but for the NPFAA**

The Ninth Circuit has made clear that the first factor does *not* require a deliberate intent to violate the law in the future, but rather only requires Plaintiffs to allege "specific past instances" of speech arguably proscribed by the law. *Tingley*, 47 F.4th at 1068. In other words, a plaintiff need not "specify 'when, to whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past." *Id.* (citation omitted). This test ensures "expos[ing oneself] to actual arrest or prosecution" is not a prerequisite for bringing a First Amendment challenge. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

The Complaint is full of examples of such past speech that Plaintiffs wish to continue engaging in, but have refrained from because of the NPFAA. *See* Compl. ¶¶ 62 et seq. For instance, Plaintiffs allege that, before the NPFAA's passage, Professor Witt assigned "a book chapter that she co-authored" in two courses, which discussed how certain ethical principles in the field of social work "underlie the rationale for a pro-choice argument" and provided "prompts regarding abortion" for written student assignments. *Id.* ¶¶ 74 & n.1, 85. Professor Witt also ordinarily announced publication of her scholarship, which "focuses on human rights and human sexuality . . . including access to abortion," within the university community and on the internet. *Id.* ¶ 89. And a member of the State Federation who teaches a gender studies course at BSU similarly "included a unit on reproductive rights and assigned materials on different perspectives on abortion" before the NPFAA was enacted. *Id.* ¶ 77; *see also* Pls.' Mot. for Prelim. Inj. Ex. 12 ¶¶ 20–27, Dkt. 2-12. These individuals are complying or "over-complying with the law" by curtailing this speech only "to avoid prosecution." *Isaacson*, 84 F.4th at 1099 (9th Cir. 2023); *see also, e.g.*, Compl. ¶¶ 74, 77, 85, 89. These detailed facts must be taken as true "for the purpose of determining standing," and they more than adequately allege "specific past instances" of speech

7

in Ada County arguably proscribed by the law. *Isaacson*, 84 F.4th at 1099; *Tingley*, 47 F.4th at 1067 (explaining that a plaintiff's "standing to bring First Amendment claims . . . 'in no way depends on the merits' of those claims" (citation omitted)).

Defendant Bennetts asserts that it is "not clear" whether Plaintiffs have alleged an intent to violate the NPFAA "*in Ada County*" because Professor Witt, who teaches at BSU in Ada County, might be teaching "an online course from another location." Mem. in Support of Def. Bennetts' Mot. to Dismiss (hereafter, "MTD") 6–7 & n.3, Dkt. 38-1 (emphasis added). This is a cramped and unreasonable reading of the Complaint's allegations, which must be "accept[ed] as true," along with all reasonable inferences that may be drawn from them, and "construe[d]" in Plaintiffs' favor. *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (citation omitted). The Complaint plainly alleges that Professor Witt and State Federation members engage in academic teaching and scholarship at BSU and have curtailed their academic speech as a result of the NPFAA. *See, e.g.*, Compl. ¶¶ 74, 77, 85, 89. Defendant Bennetts' speculation does not undermine the Complaint's allegations and the "common sense" inference that these BSU faculty members are forgoing academic speech in Ada County, where BSU's campus is located and on-campus teaching and writing would occur. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[2]

Defendant Bennetts also contends that Plaintiffs' allegations are insufficient because "it is not clear" that their academic speech "would violate the statute." MTD 6. In a footnote, she suggests that Plaintiffs simply "misread[]" the NPFAA. MTD 6 n.2. The lack of clarity Defendant Bennetts acknowledges is the reason *why* Plaintiffs have brought this action and pled that their

---

[2] While the allegations in the Complaint plainly suffice, any concern about this aspect of Plaintiffs' allegations could easily be addressed in an Amended Complaint, because Professor Witt in fact engaged in the academic speech at issue while present in Ada County and wishes to do so again in the future. *See* Fed. R. Civ. P. 15(a)(2).

academic speech is unconstitutionally chilled. *SBA List*, 573 U.S. at 162 (evaluating whether plaintiffs' speech "is 'arguably . . . proscribed by [a] statute'"). Plaintiffs need only plausibly allege that their speech has been chilled by a reasonable fear of unconstitutional prosecution. *See id.* Further, Defendant Bennetts neither explains what she thinks *would* violate the NPFAA nor seeks to dismiss the Complaint because Plaintiffs' speech falls outside the statute's scope. The Complaint amply alleges that Plaintiffs reasonably fear that their teaching and scholarship—which cover viewpoints that could be construed as favorable to abortion—could fall within the NFPAA's vague prohibition on promoting or counseling in favor of abortion. *See* Compl. ¶¶ 107–11.

Plaintiffs thus satisfy the first factor because they have previously engaged in academic speech about abortion that could be construed as violating the NPFAA and, but for the threat of prosecution, would do so again. *See, e.g.*, *id.* ¶¶ 74, 77, 85, 89.

### b. Defendant Bennetts' Failure to Disavow Enforcement of the NPFAA Supports Injury

To satisfy the second factor, Plaintiffs need only allege facts sufficient to plead "a plausible and reasonable fear of prosecution" by Defendant Bennetts. *Isaacson*, 84 F.4th at 1100 (citation omitted). Although the Ninth Circuit has sometimes used the phrase "specific warning or threat to initiate proceedings" as a shorthand for this factor, it has repeatedly held that "a plaintiff may reasonably fear prosecution even if enforcement authorities have not communicated an explicit warning," and has "never held that a specific threat is necessary to demonstrate standing." *Id.* (citation omitted). The Ninth Circuit has instead instructed that courts must "take[] a broad view of this factor," which is simply a proxy for ruling out "'imaginary or wholly speculative' threat[s].'" *Id.* (quoting *Babbitt*, 442 U.S. at 302).

This precedent forecloses Defendant Bennetts' argument that a "warning or threat directed to the Plaintiffs from Ada County to initiate proceedings under Section 18-8705" is required for

this factor to favor standing. MTD 8. To the contrary, under Ninth Circuit precedent, an enforcement official's failure to disavow enforcement of a statute is "strong evidence" that plaintiffs "face a credible threat" of enforcement. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021); *see also Tingley*, 47 F.4th at 1068 (similar). Indeed, Defendant Bennetts' own cited authority confirms that "the Government's failure to disavow application of the challenged provision" favors standing. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000); *see* MTD 8–9 (quoting *Stroh*, 205 F.3d at 1155). When a plaintiff pleads that a defendant's failure to disavow enforcement "will cause" the plaintiff "to self-censor," a sufficiently specific threat or warning exists. *Tingley*, 47 F.4th at 1068.

Defendant Bennetts asserts that "non-action" with respect to the NPFAA does not constitute "a failure to disavow enforcement" that supports standing. MTD 8. This argument fails. As the Ninth Circuit has made clear, a prosecutor's failure to state that a statute "will not be enforced" is the kind of non-action that *bolsters* a plaintiff's standing. *Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996) (citation omitted) (noting that "[t]he Attorney General of California has not stated affirmatively that his office will not enforce" a challenged law). That rule makes good sense. "[M]ost people are frightened of violating criminal statutes" because "the threat" of prosecution "is latent in the existence of the statute." *Getman*, 328 F.3d at 1095 (citation omitted). This latent threat is underscored by Prosecutor Bennetts' refusal to disavow enforcement "during this litigation." *Cal. Trucking Ass'n*, 996 F.3d at 653. The Complaint is replete with "concrete factual scenarios" of academic speech Plaintiffs have forgone for fear of prosecution. MTD 9. But even when presented with these facts, Defendant Bennetts has refused to say whether Plaintiffs would face prosecution if they reengaged in this type of academic speech.

Plaintiffs' standing argument is further strengthened by Defendant Bennetts' failure to disavow enforcement of the NPFAA against academic speech about abortion before this litigation began. Defendant Bennetts never answered the ACLU of Idaho's November 2022 letter requesting information about whether she would enforce the NPFAA against university faculty engaged in academic speech about abortion. Compl. ¶¶ 55–56. Regardless of whether Defendant Bennetts has a "duty" to answer such letters, MTD 9, her choice to remain silent and keep her options open with respect to prosecuting Plaintiffs for their academic speech supports standing.

But for the NPFAA, Plaintiffs would engage in a wide range of academic speech about abortion. *See supra* at 7–9. But because of Defendant Bennetts' refusal to disavow enforcement, Plaintiffs continue to censor their own academic speech. *Tingley*, 47 F.4th at 1068. Together, the text of the NPFAA, Defendant Bennetts' sustained refusal to disavow enforcement of the NPFAA against Plaintiffs, and Plaintiffs' resulting self-censorship are more than sufficient to establish a non-speculative threat.

<b>c.</b>    <b>Enforcement History Has "Little Weight" for Recently Enacted Laws Like the NPFAA</b>

As to the final factor, Defendant Bennetts repeatedly asserts that she has not enforced or threatened to enforce the NPFAA. *See* MTD 1, 3–4, 9–10. But enforcement history is "not dispositive" in the credible-threat analysis. *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 872 (9th Cir. 2013). Far from it: "[T]he history of enforcement" factor "carries 'little weight' when the challenged law is 'relatively new' and the record contains little information as to enforcement." *Tingley*, 47 F.4th at 1064–66, 1069 (citation omitted) (plaintiff had standing to challenge statute enacted three years prior despite lack of enforcement since that time). Unsurprisingly, "[c]ourts have found standing where no one had ever been prosecuted under the challenged provision." *LSO*, 205 F.3d at 1155 (citation omitted); *see also Isaacson*, 84 F.4th at

11

1101 ("[T]he lack of past prosecution does not preclude Plaintiffs' standing."). And the sea-change in the legal landscape with respect to abortion regulation in the wake of *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), a decision that came down *after* the NPFAA was enacted, makes past enforcement history for abortion-related speech or conduct especially non-probative.

Thus, under the three factors, Plaintiffs have adequately pled a genuine threat of NPFAA enforcement by Defendant Bennetts, sufficient to allege an actual, imminent injury in fact.

### 2.    The Threat of Enforcement Is Fairly Traceable to Defendant Bennetts

Defendant Bennetts argues that any threat of enforcement that Plaintiffs face is traceable to the NPFAA, but not to her. MTD 10–13.

This argument completely misunderstands traceability. Where, as here, plaintiffs sue to enjoin enforcement of a criminal statute and name a county prosecutor as a defendant, the traceability inquiry does not turn on whether the prosecutor played a role in enacting the challenged statute. Rather, a government official's "power to enforce" a challenged statute "demonstrates the requisite causal connection for standing purposes." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004); *see also Sullivan v. Ferguson*, 636 F. Supp. 3d 1276, 1284 & n.2 (W.D. Wash. 2022) (holding that injury was traceable to county officials "entrusted with the enforcement of state criminal laws" and noting that, in *Wasden*, "[t]he Ada County Prosecuting Attorney acknowledged that they had enforcement authority regarding [state laws] that created the potential for prosecution").

Under this test, Plaintiffs' harm is traceable to Defendant Bennetts. The NPFAA imposes criminal penalties, and Idaho law assigns Defendant Bennetts "*primary*" prosecuting authority for all state criminal laws, including the NPFAA, in Ada County. Idaho Code § 31-2227(1) (emphasis added). Because Defendant Bennetts has the primary duty of enforcing the NPFAA in Ada County,

Plaintiffs' injury in the form of self-censorship, *see, e.g.*, Compl. ¶¶ 63, 74, 76–78, 86–87, is fairly traceable to Defendant Bennetts. *See Wasden*, 376 F.3d at 920.

Resisting this result, Defendant Bennetts relies on *California v. Texas*, 141 S. Ct. 2104, 2114 (2021), arguing that Plaintiffs cannot satisfy traceability because they "have not pointed to any way in which" she "will act to enforce" the NPFAA. MTD 10–11 (citation omitted). But that case actually undercuts Defendant Bennetts' argument. In *California v. Texas*, traceability doomed the plaintiffs' claims because the challenged statute had "no means of enforcement," just a $0 "penalty." 141 S. Ct. at 2114. Here, by contrast, the NPFAA has a robust enforcement mechanism that empowers Defendant Bennetts to pursue prosecutions that can result in prison time, monetary fines, and termination of employment. *See supra* at 2–3. Defendant Bennetts' authority to enforce a statute that carries real penalties readily satisfies the traceability requirement.

### 3.     Plaintiffs' Requested Relief Would Redress Plaintiffs' Injury

As to redressability, Defendant Bennetts simply retreads her arguments that Plaintiffs have not established an injury in fact or traceability. *See* MTD 13–14. Those arguments fail for the reasons stated above. An injunction preventing Defendant Bennetts from enforcing the NPFAA against Plaintiffs in Ada County, or a declaration that the NPFAA violates the First Amendment as applied to Plaintiffs' academic speech or is unconstitutionally vague, would plainly redress Plaintiffs' injury by foreclosing the threat of prosecution and lifting the chill on their constitutionally protected academic speech about abortion. *See, e.g.*, *Ariz. Att'ys for Crim. Just. v. Brnovich*, No. 20-16293, 2021 WL 3743888, at *2 (9th Cir. Aug. 24, 2021).

### B.     Plaintiffs' First Amendment Claims Are Ripe for Resolution

Defendant Bennetts also tacks a ripeness argument on to her standing challenge. *See* MTD 5 (purporting to address standing and ripeness "together"). But Plaintiffs' claims are plainly both constitutionally and prudentially ripe for this Court's review.

13

Constitutional ripeness "is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (citation omitted). As explained above, Plaintiffs allege a cognizable injury in fact; their claims are therefore constitutionally ripe. *Planned Parenthood Great Nw. v. Labrador*, No. 1:23-cv-142-BLW, 2023 WL 4864962, at *18 (D. Idaho July 31, 2023).

Plaintiffs' claims are also prudentially ripe (which Defendant Bennetts contests only in a footnote, *see* MTD 10 n.4) because (1) they are fit for review and (2) withholding review would inflict substantial hardship. *See Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021). Plaintiffs' claims are fit for review because the issues raised in the Complaint "are primarily legal, do not require further factual development, and the challenged [law] is final." *Tingley*, 47 F.4th at 1070 (citation omitted). Plaintiffs ask the Court to decide only the legal question of the NPFAA's constitutional validity "in the concrete setting" of its application to academic speech. *Ass'n of Irritated Residents*, 10 F.4th at 944. Fitness requires nothing more. *Cf. Planned Parenthood Great Nw.*, 2023 WL 4864962, at *19.[3]

Withholding review would inflict substantial hardship because, "[s]imply put, [Plaintiffs'] speech will [continue to] be chilled." *Id*. This impermissible choice between self-censorship and "risking . . . criminal prosecution" for protected speech is a paradigmatic hardship. *SBA List*, 573 U.S. at 167–68; *see, e.g.*, *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (same); *Animal L. Def. Fund v. Otter*, 44 F. Supp. 3d 1009, 1028 (D. Idaho 2014) (similar). Defendant Bennetts

---

[3] In particular, the "concrete factual scenario, investigation, and body of evidence" Defendant Bennetts seeks are not required. MTD 10 n.4. *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1441 (9th Cir. 1996), on which Defendant Bennetts relies for this point, is irrelevant. In *Freedom to Travel*, the plaintiffs challenged a regulation providing that an agency "may" deny license applications, arguing that it conferred "too much discretion" on the agency. *Id.* Plaintiffs' claims, in contrast, concern the constitutionality of a statute that Defendant Bennetts undisputedly has the power to enforce and that she has not disavowed an intent to enforce against Plaintiffs.

claims countervailing hardship from "being forced to defend [the NPFAA] in a vacuum" devoid of "any particular victims." MTD 10 n.4. But Plaintiffs are themselves victims of the NPFAA's pernicious chilling effects. Defendant Bennetts suffers no hardship from defending a law that has already injured Plaintiffs and continues to do so.

## II.     The Complaint States a Claim Against Defendant Bennetts

In addition to challenging Plaintiffs' standing, Defendant Bennetts argues that the Complaint fails to state a claim. First, Defendant Bennetts argues that the Complaint does not satisfy the pleading requirements of 42 U.S.C. § 1983. MTD 14–16. Second, Defendant Bennetts argues that the Complaint should be dismissed as to her because the Complaint includes a facial challenge to the NPFAA. MTD 16–17. Both arguments fail.

### A.     Plaintiffs State a Valid Section 1983 Claim

Plaintiffs brought this "action to enforce constitutional rights pursuant to 42 U.S.C. § 1983 and the United States Constitution." Compl. ¶ 9. Defendant Bennetts asserts that Plaintiffs cannot plead a Section 1983 claim against her because Plaintiffs have failed to allege that her "conduct was the actionable cause of the claimed injury." MTD 14–15 (citing *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 (9th Cir. 2023)). Specifically, Defendant Bennetts contends that Plaintiffs' Complaint must be dismissed because she has not "done anything at all" to enforce the NPFAA in violation of Plaintiffs' constitutional rights. MTD 15.

This assertion is incorrect. It is well-established that "[a] plaintiff seeking injunctive relief against the State" under Section 1983 "is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citation omitted). Instead, "a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Id.*; *see also*

*Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022) (similar); *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (similar).

Plaintiffs' Complaint pleads a Section 1983 claim against Defendant Bennetts in her official capacity. It pleads that the NPFAA violates the First and Fourteenth Amendments to the U.S. Constitution and that Defendant Bennetts has primary responsibility for enforcing the NPFAA in Ada County under Idaho state law. Compl. ¶¶ 25, 101–11; *see also supra* at 12. Indeed, the Complaint mirrors the challenge in *Wasden*, 376 F.3d 908. There, the plaintiffs "sued under 42 U.S.C. § 1983, via the doctrine of *Ex parte Young*" to enjoin enforcement of an abortion restriction. *Id.* at 914 n.3; *see also Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (explaining that *Ex parte Young* "permits courts of equity to enjoin enforcement of state statutes that violate the Constitution"). As the Ada County prosecutor correctly recognized in *Wasden*, he was a "proper defendant with regard to" statutory "provisions creating the potential for prosecution." 376 F.3d at 919. The Ninth Circuit's binding holding that the Ada County prosecutor and Idaho attorney general were proper defendants in an action challenging a criminal statute controls the result here. And courts routinely apply identical reasoning to Section 1983 claims to enjoin county prosecutors from enforcing allegedly unconstitutional state statutes, which are a staple of civil rights litigation.[4]

Defendant Bennetts also seeks dismissal because Plaintiffs "fail to make any allegation against Ada County" and suing her is "equivalent to suing the local government entity itself." MTD 15. According to Defendant Bennetts, Plaintiffs are in fact pleading a municipal liability

---

[4] *See, e.g.*, *Proj. Veritas v. Schmidt*, 72 F.4th 1043, 1052–53 (9th Cir. 2023) (Section 1983 claim against Oregon Attorney General and county district attorney to enjoin enforcement of prohibition on recording conversations); *Picard v. Magliano*, 42 F.4th 89, 95 (2d Cir. 2022) (Section 1983 claim against county district attorney to enjoin enforcement of criminal contempt statute against certain speech promoting jury nullification); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1028 (6th Cir. 2022) (Section 1983 claim against Tennessee Attorney General and county prosecutors to enjoin restrictions on solemnization of marriages).

claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).
MTD 15. *Monell* authorizes Section 1983 suits against a municipality or other local government
body where "the action that is alleged to be unconstitutional implements or executes a policy
statement, ordinance, regulation, or decision officially adopted and promulgated by that body's
officers." 436 U.S. at 690; *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011).

    *Monell* is inapposite here. Plaintiffs have sued Defendant Bennetts as an agent of the *State
of Idaho* to enjoin her from enforcing the NPFAA, a state criminal statute she is charged with
enforcing, not as an agent of *Ada County* to hold Ada County liable for its own policy. Plaintiffs
need not establish municipal liability under *Monell* to seek relief in suits against county officials
charged with enforcing state laws.[5] And here, Defendant Bennetts is undoubtedly a state agent for
purposes of the NPFAA's enforcement. The Idaho Supreme Court has held that county prosecutors
carrying out their prosecutorial duty to enforce state law do so as "members of the prosecutorial
branch of the State of Idaho and are agents of the State of Idaho." *State v. Baker*, 322 P.3d 291,
293–95 (Idaho 2014) (holding that a plea agreement entered into in Ada County was binding on
prosecutors in Kootenai County); *see also id.* at 295 (explaining that Idaho county prosecutors'
"authority is derived from state statutes and their cases are prosecuted in the name of the State of
Idaho"). Defendant Bennetts' argument that she is somehow "independent of the State
government" for purposes of this challenge is meritless. MTD 16.[6]

---

[5] *See, e.g.*, *Wasden*, 376 F.3d at 914, 919–20; *Buffin v. California*, 23 F.4th 951, 960–64 (9th Cir.
2022) (holding that a county sheriff acted in her official capacity as a state agent where she was
"charged by state law with enforcing a state-mandated bail regime"); *Carter v. City of
Philadelphia*, 181 F.3d 339, 352–53 (3d Cir. 1999) (explaining that "county . . . enforcement
officials may be State officials when they prosecute crimes or otherwise carry out policies
established by the State"); *Echols v. Parker*, 909 F.2d 795, 800–01 (5th Cir. 1990) (similar).

[6] Defendant Bennetts' cited authority addressing *Monell* is not to the contrary. Rather, Defendant
Bennetts' cases stand for the uncontroversial (and irrelevant) proposition that when a plaintiff

Defendant Bennetts also suggests that she is not the cause of Plaintiffs' injury because Plaintiffs allege "harm caused by the Legislature." MTD 16–17. But the fact that Plaintiffs are challenging the NPFAA as unconstitutional does not make the Idaho legislature a proper defendant. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" (citation omitted)). Defendant Bennetts' argument flouts decades of precedent countenancing constitutional challenges to state statutes filed against county prosecutors with enforcement authority.[7]

### B.   Plaintiffs' Pursuit of As-Applied and Facial Challenges Does Not Warrant Dismissal of Any Claim Against Defendant Bennetts

Defendant Bennetts contends that she is not a necessary party to this case because if Plaintiffs prevail on their facial challenge to the NPFAA, Plaintiffs would receive the same relief even if she were not a defendant. MTD 17. This argument is not only unsupported by authority, but also misunderstands Plaintiffs' Complaint and requested relief. Plaintiffs have brought (a) an as-applied challenge under the First Amendment;[8] and (b) a facial and as-applied challenge under

---

names a county as a defendant, it is redundant to sue an employee of the same county in an official capacity. *See, e.g.*, *Olsen v. City of Boise*, No. 1:20-cv-00478-DCN, 2022 WL 3042982 (D. Idaho Aug. 2, 2022); MTD 15.

[7] Defendant Bennetts also contends that "[i]t is unfair to require Ada County taxpayers to bear an unfair share of the burden of this litigation" because "Ada County has no authority to pass such a law" and "Ada County taxpayers are . . . required to pay double" by funding both the state and county's defense of the instant suit. MTD 18. This argument is unsupported by any caselaw and irrelevant to whether Plaintiffs' Complaint passes muster at the pleading stage. And it ignores that Defendant Bennetts is an agent of the state when she carries out her legally mandated duties of enforcing state law. If Defendant Bennetts wished to improve her chances of avoiding this suit, she could have simply disavowed an intent to enforce the NPFAA against professors before this suit was filed, or against Plaintiffs at any point during this litigation. Moreover, Defendant Bennetts could have sought to defray costs for Ada County taxpayers by joining her defense with the Attorney General and other Defendant County Prosecuting Attorneys.

[8] "Declare that the NPFAA violates the First Amendment as applied to academic speech at Idaho's public universities, including academic instruction, course content, classroom discussion, advising and grading of student research and writing, and academic scholarship of the Professor Plaintiffs,

the Fourteenth Amendment.[9] With respect to Plaintiffs' as-applied challenges, Professor Witt and members of the State Federation at BSU would only obtain meaningful relief if an injunction preventing the NPFAA's enforcement runs against the official primarily charged with enforcing it in Ada County. *See, e.g.*, *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 437–38 (6th Cir. 2000) (holding that prosecutors in counties where plaintiff engaged in conduct proscribed by statute were proper defendants).

Defendant Bennetts is also a proper Defendant for purposes of Plaintiffs' facial vagueness challenge. County officials responsible for enforcing a statute routinely face vagueness challenges. *See, e.g.*, *Wasden*, 376 F.3d at 914–15, 919–20 (holding that the Ada County Prosecutor and Idaho Attorney General were proper defendants in Ada County–based doctors' facial challenge to the constitutionality of statutes restricting abortion access). Here, Plaintiffs, including professors based in Ada County, have properly brought this facial challenge against a prosecutor empowered to enforce the NPFAA against them.

Defendant Bennetts' dismissal argument is also unworkable in practice. A complaint that brings as-applied and facial challenges and names multiple defendants should not be dismissed against one defendant based on the mere possibility that a facial challenge could eventually prevail. Even if the Complaint brought only a facial challenge, Defendant Bennetts' argument that her presence in the case is unnecessary would not warrant dismissal. If Defendant Bennetts were correct, every other properly named defendant could parrot the same argument, and Plaintiffs

---

members of the Union Plaintiffs, and similarly situated individuals at Idaho's public universities." Compl., Prayer for Relief ¶ A.

[9] "Declare that the NPFAA violates the Fourteenth Amendment both on its face and as applied to the academic instruction, course content, classroom discussion, advising and grading of student research and writing, and academic scholarship of the Professor Plaintiffs, members of the Union Plaintiffs, and similarly situated individuals at Idaho's public universities." Compl., Prayer for Relief ¶ B.

would be left with no one to sue. That is not the law. Defendant Bennetts' desire not to be a defendant in this case does not make her an improper one.

### III.   Defendant Bennetts Has Waived Any Argument Against Preliminary Injunctive Relief

Defendant Bennetts relies solely on the arguments in her motion to dismiss to oppose Plaintiffs' motion for a preliminary injunction. Def. Bennetts' Opp. to Pls.' Mot. for Prelim. Inj. 1, Dkt. 39. In so doing, she fails to substantively respond to any of Plaintiffs' arguments for why the court should order preliminary injunctive relief and has therefore waived any arguments opposing a preliminary injunction aside from her arguments as to standing and failure to state a claim. It is settled law that when a party fails to respond to an argument, they waive their opposition to that argument. *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 882 (9th Cir. 2022); *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992). Holding a party to its waiver is particularly appropriate where, as here, the party is "sophisticated" and "represented by able counsel." *Soo Line R.R. Co. v. Consol. Rail Corp.*, 965 F.3d 596, 602 (7th Cir. 2020); *see also United States v. Smith*, 506 F. App'x 600, 602 n.3 (9th Cir. 2013) (applying same principle to the federal government). Here, Defendant Bennetts does not (1) defend the constitutionality of the NPFAA under either the First Amendment or the Fourteenth Amendment; (2) contest that Plaintiffs will suffer irreparable harm; or (3) dispute that the balance of equities and the public interest favor an injunction. *See* Mem. in Support of Pls.' Mot. for Prelim. Inj. 7–20, Dkt. 2-1. Accordingly, Defendant Bennetts has waived any argument in opposition to each of these issues.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted and Defendant Bennetts' motion to dismiss should be denied.

Dated: November 16, 2023

Samir Deger-Sen*
Peter Trombly*
Margaret Babad*
Emily True*
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
samir.deger-sen@lw.com
peter.trombly@lw.com
molly.babad@lw.com
emily.true@lw.com

Danielle Conley*
Margaret A. Upshaw*
Cherish A. Drain*
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2200
Fax: (202) 637-2201
danielle.conley@lw.com
maggie.upshaw@lw.com
cherish.drain@lw.com

Marissa Marandola*
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
marissa.marandola@lw.com

Amanda Barnett*
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: (213) 485-1234
Fax: (213) 891-8763
amanda.barnett@lw.com

Respectfully submitted,

/s/ *Erika Birch*
Erika Birch (ISB No. 7831)
Strindberg Scholnick Birch
    Hallam Harstad Thorne
American Civil Liberties Union of
    Idaho Foundation Cooperating Attorney
1516 W Hays St.
Boise, Idaho 83702
Tel: (208) 336-1788
erika@idahojobjustice.com

Scarlet Kim*
Andrew Beck*
Vera Eidelman*
Elizabeth Gyori*
American Civil Liberties
    Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Fax: (212) 549-2649
scarletk@aclu.org
abeck@aclu.org
egyori@aclu.org

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
    Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

Seth Kreimer*
3501 Sansom Street
Philadelphia, PA
skreimer@law.upenn.edu


\* *Admitted pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2023, I filed the foregoing Combined Memorandum of Law in Opposition to Defendant Bennetts' Motion to Dismiss and Reply in Support of Plaintiffs' Motion For Preliminary Injunction electronically though the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Raúl R. Labrador
Office of the Attorney General State of Idaho
700 W. Jefferson St.
P.O. Box 83720
Boise, ID 83720-0010

Jan M. Bennetts
Ada County Prosecuting Attorney
Adan County Prosecutor's Office
200 W. Front St., Room 3191
Boise, ID 83702

Stephen F. Herzog
Bannock County Prosecuting Attorney
624 E. Center St., Room 204
Pocatello, ID 83201

Bill Thompson
Latah County Prosecuting Attorney
Latah County Courthouse
522 S. Adams St., Room 211
Moscow, ID 83843

/s/ Erika Birch
Erika Birch (ISB No. 7831)