Erika Birch (ISB No. 7831)
Strindberg Scholnick Birch
 Hallam Harstad Thorne
American Civil Liberties Union of
 Idaho Foundation Cooperating Attorney
1516 W. Hays Street
Boise, Idaho 83702
Tel: (208) 336-1788
erika@idahojobjustice.com

Danielle Conley*
Margaret A. Upshaw*
Cherish A. Drain*
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2200
Fax: (202) 637-2201
danielle.conley@lw.com
maggie.upshaw@lw.com
cherish.drain@lw.com

Scarlet Kim*
Andrew Beck*
Vera Eidelman*
Elizabeth Gyori*
American Civil Liberties
 Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Fax: (212) 549-2649
scarletk@aclu.org
abeck@aclu.org
egyori@aclu.org

Samir Deger-Sen*
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
samir.deger-sen@lw.com

*Attorneys for Plaintiffs*

*Admitted pro hac vice*            *Additional attorneys listed on next page*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
### SOUTHERN DIVISION

| | |
|---|---|
| IDAHO FEDERATION OF TEACHERS et al., | |
| *Plaintiffs*, | Case No. 1:23-cv-353-DCN |
| v. | |
| RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al., | **COMBINED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LABRADOR, HERZOG, AND THOMPSON'S MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| *Defendants*. | |

Peter Trombly*
Margaret Babad*
Emily True*
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
peter.trombly@lw.com
molly.babad@lw.com
emily.true@lw.com

Marissa Marandola*
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
marissa.marandola@lw.com


*Admitted pro hac vice*

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

Amanda Barnett*
Latham & Watkins LLP
355 S. Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: (213) 485-1234
Fax: (213) 891-8763
amanda.barnett@lw.com

Seth Kreimer*
3501 Sansom St.
Philadelphia, PA
skreimer@law.upenn.edu


*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

I.     Plaintiffs Have Standing ............................................................................................ 6

       A.     The Professor Plaintiffs Have Standing.................................................... 6

             1.     Plaintiffs Are Injured by the Threat of Prosecution................................... 6

                   a.     Plaintiffs Have Engaged in Past Speech Proscribed by the NPFAA, and Would Do So Again but for the NPFAA ....... 7

                   b.     Defendants' Failure to Disavow Enforcement of the NPFAA Supports Injury.............................................................................. 8

                   c.     Enforcement History Has "Little Weight" for Recently Enacted Laws Like the NPFAA.............................................................. 12

             2.     The Threat of Enforcement Is Fairly Traceable to Defendants ............... 12

             3.     Plaintiffs' Requested Relief Would Redress Plaintiffs' Injury................. 12

       B.     The Union Plaintiffs Have Standing .................................................... 12

II.    Plaintiffs State Valid Claims for Violations of their Constitutional Rights..................... 14

       A.     Plaintiffs State a First Amendment Claim ............................................ 14

       B.     Plaintiffs State a Fourteenth Amendment Claim ................................... 17

       C.     This Court Should Resolve the Constitutional Question ...................................... 18

III.   Plaintiffs Are Entitled to Relief .......................................................................... 19

CONCLUSION................................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015)............................................................................. 6

*Astrue v. Ratliff*, 560 U.S. 586 (2010)........................................................................................ 15

*Bennett v. Fed. Savs. Bank*, No. 2:23-cv-00155-DCN, 2023 WL 5401373 (D. Idaho Aug. 21,

    2023) ....................................................................................................................................... 5

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002)........................................ 9

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)................................ 6, 7, 9

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141 (9th Cir. 2001) ..................................... 18

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989)............................................................. 16

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) .......................................... 13

*EQT Prod. Co. v. Wender*, 870 F.3d 322 (4th Cir. 2017) ........................................................... 10

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)................................................ 13, 14

*Fikre v. FBI*, 904 F.3d 1033 (9th Cir. 2018)............................................................................... 12

*Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir. 2021)........................... 13

*Green v. Miss United States of America, LLC*, 52 F.4th 773 (9th Cir. 2022).............................. 19

*Hansen v. White*, 762 P.2d 820 (Idaho 1988) ............................................................................ 17

*Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020) ................................................................. 5

*Holly Care Ctr. v. State, Dep't of Emp.*, 714 P.2d 45 (Idaho 1986) ........................................... 10

*Isaacson v. Mayes*, 84 F.4th 1089 (9th Cir. 2023)............................................................... 6, 9, 11

*Latta v. Otter*, 771 F.3d 496 (9th Cir. 2014)............................................................................... 20

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014)....................................................................... 5

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)........................................................................ 9

*Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989) ........................................... 15

*McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ................................................................ 10

*N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) ............................................. 10

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) ......................................................................... 16

*Perlot v. Green*, 609 F. Supp. 3d 1106 (D. Idaho 2022) .............................................................. 5

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) .......................................................................... 9

*Porter v. Bowen*, 496 F.3d 1009 (9th Cir. 2007) ........................................................................ 11

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005)............................................ 20

*Priorities USA v. Nessel*, 462 F. Supp. 3d 792 (E.D. Mich. 2020).............................................. 19

*Reno v. ACLU*, 521 U.S. 844 (1997)............................................................................................ 18

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ................................... 7

*Russello v. United States*, 464 U.S. 16 (1983) ............................................................................. 17

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867(9th Cir. 2022)............................... 13, 14

*Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020) ........... 17

*Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984) ................................. 19

*State v. Bennett*, 125 P.3d 522 (Idaho 2005)................................................................................. 17

*State v. West*, 470 P.3d 1249 (Idaho Ct. App. 2020) .................................................................... 16

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................................................... 6, 7

*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) ............................................................. 6, 9, 12

*Twin Lakes Canal Co. v. Choules*, 254 P.3d 1210 (Idaho 2011).................................................. 17

*United States v. Gonzales*, 520 U.S. 1 (1997).............................................................................. 16

*United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020)................................................................... 8

*United States v. Rundo*, 990 F.3d 709 (9th Cir. 2021).................................................................. 14

*United States v. Stevens*, 559 U.S. 460 (2010)........................................................................ 18, 19

*United States v. Williams*, 553 U.S. 285 (2008) ........................................................................ 7, 14

*Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) ........................................ 10

*Westerberg v. Andrus*, 757 P.2d 664 (Idaho 1988) ..................................................................... 16

**Statutes**

H.B. 2 § 6, 67th Leg., First Reg. Sess. (Idaho 2023) ..................................................................... 4

Idaho Code § 18-8705(1) ...................................................................................... 2, 14, 16, 17

Idaho Code § 18-8705(2) ............................................................................................................ 2

Idaho Code § 18-5702 ................................................................................................................. 2

Idaho Code § 18-8709 ................................................................................................................. 2

**Other Authorities**

Attorney General Opinion No. 23-1, https://www.ag.idaho.gov/content/uploads/2023/04/23-
    86095-Response-OPN-23-1.pdf (Apr. 27, 2023) .................................................................. 11

Jacob Fischler, *'What century are we in?' Biden asks of University of Idaho ban on abortion
    counseling*, Idaho Capital Sun (Oct. 4, 2022), https://idahocapitalsun.com/2022/10/04/what-
    century-are-we-in-biden-asks-of-university-of-idaho-ban-on-abortion-counseling/ ................. 3

**INTRODUCTION**

Plaintiffs and the Attorney General, the Bannock County Prosecuting Attorney, and the Latah County Prosecuting Attorney ("Defendants") agree on one fundamental point: the NPFAA should not reach academic speech about abortion. But Defendants' non-binding reading of the NPFAA is too little, too late. Plaintiffs have suffered and continue to suffer the law's chilling effect on their teaching and scholarship. Among other things, the NPFAA has forced professors to omit instruction and debate on abortion from courses ranging from bioethics and philosophy to literature and political science, depriving scholars of the ability to teach on an important and relevant topic in their fields of study and students of the opportunity to receive critical information. This Court should put an end to that constitutional injury by preliminarily enjoining enforcement of the NPFAA as applied to academic speech or, at minimum, ordering Defendants to answer the Complaint so that this case can be expeditiously resolved through a declaratory judgment clarifying that the NPFAA cannot reach such speech.

Defendants instead urge this Court to dismiss for lack of Article III standing or for failure to state a claim. Neither resolution is warranted. Defendants' central argument is that no reasonable interpretation of the terms "promote" and "counsel in favor of" can cover Plaintiffs' academic speech. But courts have recognized that terms such as "promote" and "counsel in favor of" have meanings that vary with context and can refer to encouraging or advocating in favor of something. In the context of the NPFAA, they are reasonably read to extend to academic speech about viewpoints favorable to abortion. Indeed, for this reason, Idaho's public universities—institutions with sophisticated legal counsel—warned faculty about the risk of prosecution for their speech.

Plaintiffs thus easily satisfy the standing requirement to show their academic speech is arguably proscribed by the NPFAA. And Plaintiffs' fear of prosecution under this statute is particularly reasonable because Defendants never disavowed any intent to prosecute university

1

faculty for their academic speech prior to this lawsuit. Indeed, even now, the asserted interpretation of the NPFAA does not reflect a binding commitment by any Defendant not to apply the law to Plaintiffs' academic speech in the future. This Court should not dismiss this case on standing grounds based on a mere litigation position. Nor do Defendants' failure-to-state-a-claim arguments fare any better. Because the NPFAA is reasonably read to cover academic speech about abortion and is impermissibly ambiguous, it violates Plaintiffs' First and Fourteenth Amendment rights.

This Court's intervention is needed to alleviate the NPFAA's harms to academic instruction, debate, and inquiry. Holding that Defendants cannot use the NPFAA to prosecute academic speech about abortion would provide Plaintiffs with meaningful relief and cement the parties' ostensibly shared view that academic speech about abortion should not be proscribed by the NPFAA. The Court should deny the motion to dismiss and enter preliminary injunctive relief.

## **BACKGROUND**

The NPFAA prohibits the use of public funds "in any way" to "promote abortion" or "counsel in favor of abortion," and provides that "[n]o person" receiving such funds may use them to "promote abortion." Idaho Code §§ 18-8705(1), (2). Violating the NPFAA subjects public employees to imprisonment for up to fourteen years, fines of up to $10,000, termination from public employment, and restitution of "misused" public funds. *Id.* §§ 18-8709, 18-5702.

The NPFAA has severely chilled academic discourse about abortion at Idaho's public universities. Plaintiffs are university professors and unions with faculty members who teach about abortion across an array of disciplines. Compl. ¶¶ 1, 5, Dkt. 1. Plaintiffs fear that engaging in instruction and scholarship regarding abortion will expose them to criminal penalties. As a result, they have changed their approach to teaching and scholarship—removing materials and entire modules from courses; curtailing classroom discussion; changing assignments; and altering their scholarship. *See id.* ¶¶ 59–93; Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (hereafter, "PI Mem.")

4–6, Dkt. 2-1. As just one example, Professor Aleta Quinn removed a module on human reproduction from her "Biomedical Ethics" course and no longer permits discussion on philosophical perspectives in favor of and against abortion or assigns readings such as Judith Jarvis Thomson's "A Defense of Abortion," a seminal work of applied ethics. Compl. ¶¶ 64–66.

The NPFAA has also impacted the Union Plaintiffs—the Idaho Federation of Teachers ("State Federation") and University of Idaho ("UI") Federation. *Id.* ¶¶ 95, 97. The Union Plaintiffs have diverted resources from their core missions of advocating for improved working conditions and recruiting new members to address the NPFAA, including by informing members about their legal rights and discussing the NPFAA's potential impact on academic speech. *Id.* ¶¶ 94–98.

When Plaintiffs filed this suit, no Defendant had ever suggested that the NPFAA did not cover academic speech about abortion, even though Idaho's public universities openly struggled to determine whether and to what extent the NPFAA prohibits such speech and some Defendants received direct requests for assurances that they would not prosecute academic speech.

In a September 23, 2022 memorandum, UI's General Counsel advised that UI employees must "remain neutral on the topic" of abortion "and cannot conduct or engage in discussions in violation of [the NPFAA] without risking prosecution." *Id.* ¶ 43.[1] In subsequent guidance, UI emphasized that Idaho abortion laws are "complex, unclear and written to be punitive for state employees," *id.* ¶ 46, and are "vague in many respects . . . as to the extent of the law," *id.* ¶ 47. And UI's individual guidance to faculty members reinforced the risk of prosecution. *Id.* ¶ 82 (UI

---

[1] This memorandum received widespread, national media coverage. *See* Jacob Fischler, *'What century are we in?' Biden asks of University of Idaho ban on abortion counseling*, Idaho Capital Sun (Oct. 4, 2022), https://idahocapitalsun.com/2022/10/04/what-century-are-we-in-biden-asks-of-university-of-idaho-ban-on-abortion-counseling/.

General Counsel's Office advising a Plaintiff that grading student research addressing abortion put her at "risk" because the law's "general language" "criminalizes actions to 'promote abortion'").

Boise State University also provided guidance indicating that professors could provide "general information and educational materials that discuss abortion," but only "so long as [the material] does not engage in prohibited activity," such as promoting abortion. *Id.* ¶ 51. Idaho State University similarly advised faculty to be cautious and avoid classroom discussion or assignments that could be construed as promoting abortion. *Id.* ¶ 54.

In November 2022, the ACLU of Idaho sent Defendants Herzog and Thompson letters "seek[ing] assurances that [they] will not pursue prosecutions against university faculty" for engaging in teaching, scholarship, or public speaking that "presents ideas that favor or promote abortion." *Id.* ¶ 55; *see also* Pls.' Mot. for Prelim Inj. Ex. 7, at 3, Dkt. 2-9 (listing examples of abortion-related academic speech). These Defendants never responded to the letters. Compl. ¶ 56.

In January 2023, members of the Idaho Legislature proposed an amendment to the NPFAA stating that "the term 'promote' shall not be interpreted as preventing any classroom discussion on the subject of abortion at a school, college, or university." Compl. ¶ 57 (quoting H.B. 2 § 6, 67th Leg., First Reg. Sess. (Idaho 2023)). That amendment was not enacted. *Id.* ¶ 58.

Given the NPFAA's severe impact on academic speech, Plaintiffs sued on August 8, 2023, seeking declaratory and injunctive relief to preclude Defendants from enforcing the NPFAA against Plaintiffs and other employees of Idaho's public universities who engage in academic speech about abortion. On September 15, 2023, the Attorney General issued Opinion No. 23-4 purporting to "clarify the scope of the [NFPAA] as it relates to academic teaching and scholarship" at Idaho's universities. Defs.' Mot. to Dismiss and Opp. to Mot. for Prelim. Inj. Ex. A (hereafter, "Opinion"), at 2, Dkt. 42-2. The Opinion concluded that the "plain language" of the NPFAA "does

not prohibit university employees from speaking on abortion in their academic teaching or scholarship, even if that teaching or scholarship could be viewed as supporting abortion or abortion rights in general." *Id.* at 1.

On November 2, 2023, following several extensions to allow the parties to discuss resolving this matter without motion practice, Defendants filed their combined motion to dismiss and opposition to Plaintiffs' motion for a preliminary injunction.

## **LEGAL STANDARD**

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss must be denied where the allegations are legally sufficient to invoke the court's jurisdiction. *Hecox v. Little*, 479 F. Supp. 3d 930, 958 (D. Idaho 2020). In resolving a factual challenge to subject-matter jurisdiction, a court considers whether a plaintiff's jurisdictional allegations are supported by "competent proof." *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014).

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss must be denied where a complaint "contain[s] sufficient factual matter to state a claim to relief that is plausible on its face." *Bennett v. Fed. Savs. Bank*, No. 2:23-cv-00155-DCN, 2023 WL 5401373, at *2 (D. Idaho Aug. 21, 2023) (citation omitted). A court must "view the complaint in the light most favorable to the [plaintiff] and 'accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them.'" *Id.* (alteration in original) (citation omitted).

In deciding whether to grant a preliminary injunction, the Court must consider whether Plaintiffs are likely to succeed on the merits and to suffer irreparable harm in the absence of preliminary relief; whether the balance of equities tips in Plaintiffs' favor; and whether an injunction is in the public interest. *Perlot v. Green*, 609 F. Supp. 3d 1106, 1115 (D. Idaho 2022).

## ARGUMENT

### I.     Plaintiffs Have Standing

#### A.     The Professor Plaintiffs Have Standing

To establish Article III standing, a plaintiff must show injury in fact, traceability, and redressability. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157–58 (2014). Plaintiffs have done so here by alleging (1) a credible threat of prosecution under an unconstitutional law in violation of the First and Fourteenth Amendments and chilling of their protected academic speech, which (2) is fairly traceable to Defendants, and which (3) would be redressed by a judgment preventing Defendants from enforcing the NPFAA against Plaintiffs.

#### 1.     Plaintiffs Are Injured by the Threat of Prosecution

The threat of enforcement of a law is sufficient to establish injury in fact under Article III. *Id.* at 158–59. The Ninth Circuit evaluates three considerations when assessing whether there is a credible threat of enforcement: (1) "whether the plaintiff has a concrete plan to violate the law," including as evidenced by past acts; (2) whether the "circumstances amount[] to a credible threat of enforcement," which can include—but does not require—"a specific threat or warning of prosecution"; and (3) whether there is a relevant "history of past prosecution or enforcement." *Isaacson v. Mayes*, 84 F.4th 1089, 1099–1100 (9th Cir. 2023) (citation omitted). "The unique standing considerations in the First Amendment context tilt dramatically towards a finding of standing when a plaintiff brings a pre-enforcement challenge." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022); *see also, e.g.*, *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) (endorsing "hold your tongue and challenge now" approach to First Amendment standing). A similarly "broad[]" standard applies to pre-enforcement vagueness challenges "where the effect of a vague statute would infringe upon a [plaintiff's] First Amendment rights." *Arce v. Douglas*, 793 F.3d 968, 987–88 (9th Cir. 2015).

a.      **Plaintiffs Have Engaged in Past Speech Proscribed**
**by the NPFAA, and Would Do So Again but for the NPFAA**

Defendants contend that "Plaintiffs have not pled an intent to violate the law" because "the challenged law does not apply to their intended conduct." Mem. in Supp. of Defs. Labrador, Herzog, and Thompson's Mot. to Dismiss (hereafter, "AG MTD") 5, Dkt. 42. This argument fails. The relevant inquiry turns on whether Plaintiffs intend to engage in speech "arguably affected with a constitutional interest" and "arguably. . . proscribed by [the] statute." *SBA List*, 573 U.S. at 161–62. In the First Amendment context, permitting plaintiffs to challenge a statute that "arguably covers" their speech makes good sense because such a statute "may deter constitutionally protected expression because most people are frightened of violating criminal statutes." *Cal. Pro-Life Council*, 328 F.3d at 1095 (citation omitted). Accordingly, for their standing argument to succeed, Defendants' proposed construction of the NPFAA must be the only plausible reading of the statute. But the NPFAA's text manifestly does not compel Defendants' reading.

Neither "promote" nor "counsel in favor of" is defined in the NPFAA. But their ordinary meanings can be reasonably read to reach academic speech regarding abortion. As Plaintiffs have explained, the term "promote" ordinarily means "[t]o further the growth, development, progress, or establishment of," "to advance or actively support," or "to encourage." PI Mem. 13–14. Similarly, "counsel" means "to advise [the] adoption or doing [of a thing]; to recommend." PI Mem. 14. Consistent with these definitions, courts have recognized that these broad terms can encompass many different meanings. *See, e.g.*, *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 836 (1995) (holding that prohibition on funding publications that promote "a particular belie[f] in or about a deity or an ultimate reality" violated the First Amendment because it had "vast potential reach" and encompassed "any writing advocating a philosophic position that rests upon" such belief); *United States v. Williams*, 553 U.S. 285, 294 (2008) (explaining, in

overbreadth challenge, that "promotes" is "susceptible of multiple and wide-ranging meanings"); *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020) (similar). A plain reading of these terms in the context of the NPFAA—*i.e.*, a prohibition on speech that "further[s]," "support[s]," "encourage[s]," or "recommend[s]" abortion—at least arguably proscribes Plaintiffs' academic speech, which a listener could perceive as favoring abortion. *See* PI Mem. 14; *see also infra* at 14–17 (discussing additional indicators that NPFAA's ban on using public funds "in any way" to "promote abortion" or "counsel in favor of abortion" extends to academic speech).

The universities' guidance confirms that the NPFAA can reasonably be read to reach academic speech. *See supra* at 3–4. Defendants suggest that this guidance does not support standing because it is "not an interpretation of what conduct is prohibited by anyone with authority to prosecute violations." AG MTD 7–8. But this argument misses the point. The fact that sophisticated and well-advised institutions believed that the NPFAA proscribed Plaintiffs' academic speech belies Defendants' claim that the plain language unambiguously excludes such speech.[2] And Defendants' suggestion that Plaintiffs' fear "comes . . . from" their employers, AG MTD 7, is equally misplaced—Plaintiffs and their employers simply share the same fear, based on the statute's plain terms, about how *Defendants* will enforce the NPFAA.

> **b.  Defendants' Failure to Disavow Enforcement of the NPFAA Supports Injury**

Plaintiffs need only allege facts sufficient to show "a plausible and reasonable fear of

---

[2] The university general counsel's offices employ capable counsel, including, until recently, the Attorney General's Acting Chief of Civil Litigation and Constitutional Defense. *See* Pls.' Mot. for Prelim. Inj. Ex. 1, Dkt. 2-3 (Email from "General Counsel" to University of Idaho Employees with the subject line "Guidance on Abortion Laws"); University of Idaho, *Jim Craig Named U of I General Counsel* (July 31, 2020), https://perma.cc/H79Z-9K2U. These neutral attorneys' considered judgment about the NPFAA's arguable reach undercuts the litigation-position interpretation posited by Defendants.

prosecution" by Defendants. *Isaacson*, 84 F.4th at 1100 (citation omitted). Although the Ninth Circuit has sometimes used the phrase "specific warning or threat to initiate proceedings" as a shorthand for this factor, it has repeatedly held that "a plaintiff may reasonably fear prosecution even if enforcement authorities have not communicated an explicit warning," and has "'never held that a specific threat is necessary to demonstrate standing.'" *Id*. (citation omitted); *see also Cal. Pro-Life Council*, 328 F.3d at 1094 (rejecting argument that "absent a threat or at least a warning that [the government] might prosecute" the plaintiff, the plaintiff lacks standing); *Tingley*, 47 F.4th at 1068 (similar). Defendants' claim that Plaintiffs do not have standing because Defendants have not explicitly threatened Plaintiffs with prosecution therefore fails. The Ninth Circuit instead requires courts to "take[] a broad view of this factor," which simply rules out "'imaginary or wholly speculative' threat[s].'" *Isaacson*, 84 F.4th at 1100 (citation omitted).

Defendants also contend that the Opinion interpreting the statute undercuts the reasonableness of Plaintiffs' fear of prosecution. AG MTD 8. But the Opinion does not deprive Plaintiffs of standing. As a dispositive threshold matter, "[s]tanding is determined as of the commencement of litigation." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002). The Opinion, which was issued a month after litigation commenced, has no bearing on Plaintiffs' standing. Its doctrinal significance, if any, is confined to mootness. *See id.* at 1171 n.6. But, as discussed below, Defendants make no mootness arguments here.

Even if the Opinion were relevant to standing, Defendants' reliance on it is misplaced. As Defendants' own authority recognizes, a defendant's "mere litigation position" does not prevent a plaintiff from showing standing. *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010); AG MTD 5. The Opinion bears several hallmarks of a litigation position. It was issued approximately one month after this suit commenced. *See, e.g.*, *Picard v. Magliano*, 42 F.4th 89, 99 (2d Cir. 2022)

("strategic concessions" of attorney general after commencement of suit cannot provide meaningful protection to plaintiff challenging statute as unconstitutional); *McCormack v. Herzog*, 788 F.3d 1017, 1024-25 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ("suspicious timing" of offer of transactional immunity" "suggest[ed] an attempt" to moot plaintiff's claims).

Critically, the Opinion is merely "advisory" and "not binding on the courts," the Attorney General, or his successors. *See Holly Care Ctr. v. State, Dep't of Emp.*, 714 P.2d 45, 51 (Idaho 1986). Accordingly, "there is nothing that prevents the State from changing its mind" about the Opinion's interpretation. *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000). The potential for the Attorney General to reverse course is especially high here because the Opinion's interpretation is far from the only plausible reading of the NPFAA. *See EQT Prod. Co. v. Wender*, 870 F.3d 322, 331 (4th Cir. 2017) (defendant's "litigation position cannot override the plain text of the Ordinance when it comes to establishing a credible threat of enforcement" (citation omitted)); *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710–11 (4th Cir. 1999) (jurisdiction exists when the plaintiff "is protected from possible prosecution by nothing more than the State's post-suit position that the section does not apply as its plain language would suggest").[3]

The Attorney General's Opinion also does not remove the threat of prosecution by Defendants Thompson and Herzog, the primary enforcers of the NPFAA, who have conspicuously refused to disavow enforcement against Plaintiffs. As the Ninth Circuit has held, even when a state's attorney general has disavowed enforcement of a statute, a plaintiff still has standing when

---

[3] Indeed, notwithstanding its purported plain-text interpretation, the Opinion reserves the question of how the NPFAA applies to the academic speech of "teachers at public primary and secondary schools," and cabins its analysis to "how the Act affects the academic speech of employees of public institutions of higher education." Opinion 9. That caveat undermines Defendants' assertion in this litigation that the NPFAA *cannot* be read to reach *any* academic speech.

"the [a]ttorney [g]eneral is only one of the many [independent] enforcers" of the statute. *Isaacson*, 84 F.4th at 1099–1101 (plaintiffs had credible fear of enforcement where county attorneys were not bound by attorney general's disavowal of enforcement authority). Here, contrary to Defendants' claims, the Opinion is not an interpretation of the NPFAA "by the government" writ large, AG MTD 8 (citation omitted), but a non-binding interpretation by just one of several actors charged with enforcement. Indeed, the Attorney General admits that county prosecutors "do not answer to the Attorney General."[4] *Isaacson* thus controls here.

Moreover, until the filing of this motion to dismiss, Defendants Thompson and Herzog had never offered their own interpretations of the NPFAA. They remained silent when the ACLU of Idaho sent them a letter expressly "seek[ing] assurances that [they] will not pursue prosecutions against university faculty" for engaging in academic speech "that presents ideas that favor or promote abortion." Compl. ¶ 55. And they have not made any binding commitment not to enforce the NPFAA against academic speech. Defendants Thompson and Herzog's suggestion in their briefing that Plaintiffs would not be prosecuted for their academic speech is a quintessential, non-binding litigation position. That is insufficient to undermine Plaintiffs' standing.

Indeed, it is telling that Defendants do not attempt to assert a mootness defense. To establish mootness, Defendants would bear the "heavy burden" of demonstrating that "it is absolutely clear that [the state] will not threaten to prosecute" Plaintiffs, which normally requires a binding commitment not to prosecute certain conduct or parties. *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007) (citation omitted). Such a commitment typically must contain "'procedural safeguards' insulating the new state of affairs from arbitrary reversal" and be supported by a

---

[4] Attorney General Opinion No. 23-1 at 2, https://www.ag.idaho.gov/content/uploads/2023/04/23-86095-Response-OPN-23-1.pdf (Apr. 27, 2023) (citing Idaho Code § 31-2604).

"rationale for [the government's] changed practice(s)" that ensures "that the activity complained of will not reoccur." *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018). Defendants do not even attempt to satisfy this demanding standard—and their silence on voluntary cessation is deafening. Plaintiffs' fear of prosecution is reasonable.

**c.      Enforcement History Has "Little Weight" for Recently Enacted Laws Like the NPFAA**

Defendants also argue that the lack of past enforcement cuts against Plaintiffs' standing. AG MTD 8. But, for reasons more fully discussed in Plaintiffs' opposition to Defendant Bennetts' motion to dismiss, *see* Pl.'s Opp. to Def. Bennetts' Mot. to Dismiss (hereafter, "Bennetts MTD Opp.") 11-12, Dkt. 50, enforcement history "carries 'little weight'" where, as here, "the challenged law is 'relatively new' and the record contains little information as to enforcement." *Tingley*, 47 F.4th at 1064–66, 1069 (citation omitted).

**2.      The Threat of Enforcement Is Fairly Traceable to Defendants**

Defendants rely on their arguments about lack of prior or threatened enforcement to contend that traceability is not met here. *See* AG MTD 8–9. For the same reasons discussed above and in Plaintiffs' opposition to Defendant Bennetts' motion to dismiss, the threat of enforcement is fairly traceable to Defendants. *See supra* at 6–12; Bennetts MTD Opp. 12–13.

**3.      Plaintiffs' Requested Relief Would Redress Plaintiffs' Injury**

Defendants do not contest redressability for good reason: Plaintiffs' requested injunctive and declaratory relief would redress their injuries by eliminating the threat of prosecution and the chill on their constitutionally protected academic speech. *See* Bennetts MTD Opp. 13.

**B.      The Union Plaintiffs Have Standing**

Defendants' attacks on the Union Plaintiffs' standing also miss the mark. *First*, the Union Plaintiffs have associational standing because their members—like the Professor Plaintiffs—have

12

standing. *See supra* at 6–12. *Second*, Defendants' challenge to the Union Plaintiffs' organizational standing relies on an incorrect standard. *See* AG MTD 9. For organizational standing, a plaintiff must plead that "the challenged conduct frustrated their organizational missions and that they diverted resources to combat that conduct." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021). Defendants argue that Plaintiffs must also show that this resource diversion was necessary to counteract another problem that would have otherwise occurred. *See* AG MTD 9. But as Defendants acknowledge, the test they press is not the Ninth Circuit's test. *See id.* at 10 n.2. The Ninth Circuit has explained that "[d]iversion of resources" is sufficient for standing "when organizations 'expended additional resources that they would not otherwise have expended, and in ways that they would not have expended them.'" *Friends of the Earth*, 992 F.3d at 942 (citation omitted); *accord E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). Indeed, the Ninth Circuit has expressly rejected arguments much like Defendants' argument here. *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879–80 (9th Cir. 2022).

The Union Plaintiffs plausibly plead organizational standing. As alleged, the Union Plaintiffs' missions include recruiting new members and improving working conditions for members. *See* Compl. ¶¶ 95, 97. The threat that prosecutors would use the NPFAA to punish faculty members for their academic speech frustrated the Union Plaintiffs' missions of improving working conditions for their members—after all, their members feared serious criminal penalties for simply doing their jobs. *See id*. To counteract that problem, the Union Plaintiffs have dedicated resources to informing faculty members about their legal rights, gathering faculty members to discuss the NPFAA's potential effect on their work, and giving members guidance about complying with the NPFAA. *Id.* ¶¶ 95–98; *supra* at 3. These allegations are sufficient to plead

organizational standing. *See, e.g.*, *Combs*, 285 F.3d at 905; *Sabra*, 44 F.4th 879–80.[5]

## II.     Plaintiffs State Valid Claims for Violations of their Constitutional Rights

Defendants do not dispute that, if the NPFAA extends to Plaintiffs' academic speech, it violates the First and Fourteenth Amendments. But Defendants contend that Plaintiffs' claims must be dismissed because the statute unambiguously does not reach Plaintiffs' academic speech. AG MTD 10–17. The NPFAA's plain text and structure belie Defendants' argument.

### A.     Plaintiffs State a First Amendment Claim

The NPFAA provides that "[n]o public funds . . . shall be used in any way to . . . promote abortion" or "counsel in favor of abortion." Idaho Code 18-8705(1). Defendants argue that the NPFAA proscribes only speech related "to specific efforts to facilitate specific abortions," not Plaintiffs' academic speech. AG MTD 14. But Defendants ignore both the ordinary meaning of these terms and the context in which they appear.

Defendants do not contest that the ordinary meaning of "promote" sweeps broadly, and typically means to "further the progress of (something, esp. a cause, venture, or aim); support or actively encourage." *Id.* at 13. Nor could they. *See United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021) (explaining that "'promote'" "is synonymous with 'encourage'" (citation omitted)); *supra* at 7–8. Defendants contend that for purposes of the NPFAA, however, "promote" does not refer to "abstract teaching and scholarship of abortion." AG MTD 13–14.

In so arguing, Defendants seek to equate the NPFAA's restriction with the ban on pandering and solicitation of child pornography at issue in *United States v. Williams*, 553 U.S. 285 (2008). Defendants misunderstand *Williams*. There, the Supreme Court acknowledged that

---

[5] In any event, Plaintiffs satisfy Defendants' unduly heightened organizational standing test. The Union Plaintiffs needed to divert resources to respond to members' concerns about the NPFAA, because it would have been more difficult to recruit new members and to push for improvements to working conditions without an understanding of the NPFAA's impact on union members.

"promote" by itself is a word "susceptible of multiple and wide-ranging meanings" that can reach protected speech. *Id.* at 294, 299–300. But in light of the words surrounding "promote" in the relevant law—"advertises, . . . presents, distributes, or solicits"—the Court explained that "promote[]" was "most sensibly read to mean the act of recommending purported child pornography to another person for his acquisition." *Id.* at 294–96. This "transactional" context led the Court to define "promote" as "[t]o attempt to sell or popularize by advertising or publicity." *Id.* at 295 (citation omitted). The Supreme Court thus did not adopt the definition of promote that Defendants advocate for in this case but instead interpreted the term within the context of the specific federal statute at issue. That undercuts Defendants' assertion that "promote" has just one plain meaning that cannot possibly reach academic speech.

Defendants' argument that the term "counsel in favor of" unambiguously does not cover academic speech is similarly flawed. Defendants argue that the plain meaning of "counsel" in the NPFAA must mean "counseling a specific person in a specific circumstance in favor of abortion." AG MTD 12–13; Opinion 7–8. In so arguing, Defendants define "counsel" as "advice, esp. that given formally." AG MTD 12 (quoting *Counsel*, The New Oxford American Dictionary (2001)). Defendants' attempt to artificially narrow the meaning of "counsel" falls flat because it relies on a definition of "counsel" as a *noun*, but the NPFAA uses "counsel" as a *verb*. The Supreme Court has repeatedly rejected interpretations of a word that fail to account for whether a statute employs that word as a noun or as a verb. *See Astrue v. Ratliff*, 560 U.S. 586, 592–93 (2010) (rejecting use of the definition of "the noun 'award'" to construe the meaning of "the verb 'award'"); *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 301 (1989) (similar). When "counsel"—as in the phrase "counsel in favor of"—is used as a verb, the term means "to advise [the] adoption or doing [of a thing]; to recommend." PI Mem. 14. Defendants cannot cabin the NPFAA's reach to

"formal[]" advice or advice given to "a specific person in a specific circumstance" by disregarding how the statute uses "counsel." AG MTD 12–13.

The statutory text surrounding the challenged terms further undercuts Defendants' argument that the NPFAA unambiguously excludes academic speech. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum."); *Westerberg v. Andrus*, 757 P.2d 664, 666 (Idaho 1988) (similar). *First*, the NPFAA states that "[n]o public funds . . . shall be used *in any way*" to "promote abortion" or "counsel in favor of abortion." Idaho Code § 18-8705(1) (emphasis added). "[T]he word 'any' has an expansive meaning, that is, 'one or some *indiscriminately* of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (emphasis added) (citation omitted); *State v. West*, 470 P.3d 1249, 1251 n.3 (Idaho Ct. App. 2020) (statute that "repeatedly [used] the word 'any'" had "broad application").

*Second*, the NPFAA's "promote" and "counsel in favor of" prohibitions are phrased differently—and more broadly—than the NPFAA's other prohibitions. The restrictions at issue here refer to use of public funds to "promote abortion" or "counsel in favor of abortion," whereas other prohibitions listed alongside these restrictions in the same provision use the indefinite article "an" before the word "abortion." Idaho Code § 18-8705(1) ("to provide, perform, or induce *an* abortion"; to "assist in the provision or performance of *an* abortion"; to "provide facilities for *an* abortion or for training to provide or perform *an* abortion" (emphasis added)). This difference cuts against Defendants because indefinite articles "[n]ormally . . . precede *countable* nouns," but "*noncountable* nouns" such as "abstractions. . . 'almost never take indefinite articles.'" *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021). Thus, when a statutory term (such as "abortion") "can refer to *either* a countable object . . . *or* a noncountable abstraction," the legislature's choice to use—or omit—an indefinite article "supplies some evidence" about which meaning applies. *Id.*

16

Here, because the "promote" and "counsel in favor of" prohibitions attach to "abortion," rather than "an abortion," the NPFAA's text can be more readily read to refer to abortion in the abstract. Idaho Code § 18-8705(1). Defendants' interpretation would impermissibly insert words that the legislature did not. *See Twin Lakes Canal Co. v. Choules*, 254 P.3d 1210, 1215 (Idaho 2011). The absence of this "particular language" from the "promote" and "counsel in favor of" prohibitions must be presumed to be "intentional[]" and "purpose[ful]," *Russello v. United States*, 464 U.S. 16, 23 (1983), and it further undercuts Defendants' argument.

      The Attorney General's Opinion does not alleviate these problems. As noted above, the Opinion is not binding. *See supra* at 10–11. In fact, Idaho courts regularly reject the Attorney General's opinions as unpersuasive. *See, e.g.*, *State v. Bennett*, 125 P.3d 522, 527–28 (Idaho 2005) (rejecting constitutional challenges that Idaho Attorney General opinion stated would be meritorious); *Hansen v. White*, 762 P.2d 820, 827 n.11 (Idaho 1988) (similar). And here, the Opinion actually underscores the NPFAA's ambiguity; the Attorney General would neither have been asked by a legislator "to clarify the scope of" the NPFAA "as it relates to academic teaching and scholarship," nor acceded to that request, if the law were unambiguous. Opinion 2.

      In sum, Defendants' argument that the NPFAA's plain text could not possibly reach Plaintiffs' academic speech is not a reasonable interpretation of the statutory text.

### B.      Plaintiffs State a Fourteenth Amendment Claim

      Even if the Court concludes that the NPFAA does not clearly prohibit Plaintiffs' academic speech, it should at a minimum find that the scope of the Act is impermissibly vague in violation of the Fourteenth Amendment. As explained above, the ordinary meanings of "promote" and "counsel" can vary with context. *See supra* at 7–8, 14–15; *see also, e.g.*, *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521, 543–45 (N.D. Cal. 2020) (prohibition on use of federal funds to "promote" certain concepts was unconstitutionally vague); PI Mem. 14–15. These

terms do not provide "clear notice" of the NPFAA's reach, nor do they unambiguously limit its coverage to "advising a specific person in a specific situation as to a specific course of conduct." AG MTD 15. Indeed, the struggle to interpret and clarify the NPFAA—including by Defendant Labrador himself, as well as Idaho's public universities and members of Idaho's legislature—underscores the NPFAA's ambiguity. *Supra* at 3–5. The statute thus fails to provide fair notice of what it prohibits and opens the door to arbitrary and discriminatory enforcement.

Defendants nevertheless argue that Plaintiffs fail to state a due process claim because when the *unchallenged* provisions in Idaho Code § 18-8705 are considered, the statute is clear in the "vast majority of its applications." AG MTD 16–17. But when a plaintiff challenges certain terms in a statute as vague, the analysis turns on whether *those particular terms* are vague "in the vast majority of circumstances." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151–53 (9th Cir. 2001); *Reno v. ACLU*, 521 U.S. 844, 870–874 (1997) (holding that the term "indecent" in the phrase "obscene or indecent" was unconstitutionally vague, even though the term "obscene" was not vague). That is the case for both "promote" and "counsel in favor of."

### C.    This Court Should Resolve the Constitutional Question

Defendants and Plaintiffs *agree* that "teaching and scholarship are critical" to "helping to train our Nation's future leaders, encouraging the robust exchange of ideas, [and] helping students to learn how to think critically." AG MTD 14; Compl. ¶ 2. Yet Defendants seek to end this case without any binding judgment that protects teaching and scholarship about abortion.

Defendants' request is at odds with the First Amendment's core purpose: "protect[ing] against the government." *United States v. Stevens*, 559 U.S. 460, 480 (2010). If this Court were to resolve this case without issuing a judgment that shields academic speech about abortion from prosecution, Plaintiffs and other professors who seek to engage in such academic speech would be left "at the mercy of *noblesse oblige*" because Defendants or their successors may well take an

inconsistent position in state-court prosecutions. *Id.* Federal courts are obligated not to let such threats linger. Rather, when a statute poses "a danger of chilling free speech," courts adjudicate constitutional challenges because society has a strong "interest in having the statute challenged." *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984). Plaintiffs reasonably fear prosecution under the NPFAA for their academic speech about abortion. This Court must make clear that such a prosecution would be flatly unconstitutional.

Defendants note that "Idaho's courts will adopt an interpretation that upholds the validity of the statute." AG MTD 12. But the canon of constitutional avoidance does not require courts to let constitutional injuries continue unabated. It would be perverse to apply constitutional avoidance to avoid a binding judgment when doing so would frustrate "[a] fundamental value of . . . First Amendment jurisprudence," namely, "the protection against the chilling of lawful speech." *Green v. Miss United States of America, LLC*, 52 F.4th 773, 799 (9th Cir. 2022).[6]

### III. Plaintiffs Are Entitled to Relief

To eliminate the risk of prosecution and its attendant chilling effect, Plaintiffs seek declaratory and injunctive relief that will preclude Defendants from enforcing the NPFAA against academic speech regarding abortion. Compl. ¶ 10; *id.*, Prayer for Relief, ¶¶ A-D.

Defendants' argument against preliminary injunctive relief depends entirely on their proffered interpretation of the NPFAA. But, as explained above, Defendants' interpretation is not compelled by the statute's plain terms. *See supra* at 14–17. Plaintiffs have demonstrated that they have been chilled by the NPFAA's potential application to their academic speech, and under that reasonable interpretation, they are likely to succeed on the merits of their claims. PI Mem. 7–18.

---

[6] Indeed, courts rarely address "a proffered limiting construction . . . in the context of a motion to dismiss" and instead typically impose narrowing constructions at later stages of litigation. *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 813–14 (E.D. Mich. 2020).

Defendants have no persuasive response to the remaining preliminary injunction factors. Plaintiffs have shown irreparable harm because they suffer a First Amendment injury due to the ongoing threat of the NPFAA's enforcement against their academic speech and their self-censorship due to that threat. As to the balance of equities and public interest factors, Defendants' own cited authority shows that a state's injury from having its statute enjoined gives way where, as here, enforcement of the challenged statute would cause irreparable harm to the plaintiffs. *Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014); AG MTD 18. Accordingly, to cure Plaintiffs' ongoing First Amendment and Fourteenth Amendment injuries, this Court should enter a preliminary injunction enjoining Defendants from enforcing the NPFAA against academic speech about abortion.

But if this Court were not inclined to enter a preliminary injunction, this case should still be resolved in a way that provides a clear and binding answer to the central legal question at issue: whether the NPFAA's text and the First Amendment permit the prosecution of professors at Idaho's public universities who engage in academic speech about abortion. Because Plaintiffs state cognizable claims, this Court should order Defendants to answer the Complaint on an expedited basis so that Plaintiffs may move for judgment on the pleadings. The resulting declaratory judgment construing the NPFAA's reach in accordance with its text and the requirements of the First Amendment would plainly "settle all aspects of the controversy" and "serve a useful purpose in clarifying the legal relations at issue," *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (citation omitted), by providing much-needed clarity on whether the NPFAA allows Plaintiffs to engage in academic speech that they view as essential and relevant to their chosen fields.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted and Defendants Labrador, Herzog, and Thompson's motion to dismiss should be denied.

Dated: December 8, 2023

Respectfully submitted,

/s/ *Erika Birch*
Erika Birch (ISB No. 7831)
Strindberg Scholnick Birch
   Hallam Harstad Thorne
American Civil Liberties Union of
   Idaho Foundation Cooperating Attorney
1516 W Hays St.
Boise, Idaho 83702
Tel: (208) 336-1788
erika@idahojobjustice.com

Samir Deger-Sen*
Peter Trombly*
Margaret Babad*
Emily True*
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
samir.deger-sen@lw.com
peter.trombly@lw.com
molly.babad@lw.com
emily.true@lw.com

Scarlet Kim*
Andrew Beck*
Vera Eidelman*
Elizabeth Gyori*
American Civil Liberties
   Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Fax: (212) 549-2649
scarletk@aclu.org
abeck@aclu.org
egyori@aclu.org

Danielle Conley*
Margaret A. Upshaw*
Cherish A. Drain*
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2200
Fax: (202) 637-2201
danielle.conley@lw.com
maggie.upshaw@lw.com
cherish.drain@lw.com

Dina Flores-Brewer (ISB No. 6141)
American Civil Liberties Union of
   Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
dfloresbrewer@acluidaho.org

Marissa Marandola*
Latham & Watkins LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
marissa.marandola@lw.com

Seth Kreimer*
3501 Sansom Street
Philadelphia, PA
skreimer@law.upenn.edu

Amanda Barnett*
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: (213) 485-1234
Fax: (213) 891-8763
amanda.barnett@lw.com

* *Admitted pro hac vice*

*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2023, I filed the foregoing Combined Memorandum of Law in Opposition to Defendants Labrador, Herzog, and Thompson's Motion to Dismiss and Reply in Support of Plaintiffs' Motion for Preliminary Injunction electronically though the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Raúl R. Labrador
Office of the Attorney General State of Idaho
700 W. Jefferson St.
P.O. Box 83720
Boise, ID 83720-0010

Jan M. Bennetts
Ada County Prosecuting Attorney
Adan County Prosecutor's Office
200 W. Front St., Room 3191
Boise, ID 83702

Stephen F. Herzog
Bannock County Prosecuting Attorney
624 E. Center St., Room 204
Pocatello, ID 83201

Bill Thompson
Latah County Prosecuting Attorney
Latah County Courthouse
522 S. Adams St., Room 211
Moscow, ID 83843

/s/ Erika Birch
Erika Birch (ISB No. 7831)